## In re SMITH'S ESTATE.*

### No. 15,754; December 26, 1894.

#### 38 Pac. 950.

**Appeal—Record.—Where, on Appeal, There is Neither a** bill of exceptions nor a statement of the evidence, the findings of fact will be accepted as true.

**Will—Community Property.—A Will of a Married Man, in** terms disposing of all the community property, which states that it "is made with full knowledge of property rights of husband and wife, and with the knowledge and consent of my said wife," indicates

*For subsequent opinion in bank, see 108 Cal. 115, 40 Pac. 1037.

the intention of testator to dispose of all his property, including the interest of his wife.[1]

> **Will—Community Property.—Where a Will Shows** that testator meant to dispose of community property, the conveyance by testator's widow of a life estate devised by the will operates as an acceptance by her of the provisions thereof.

APPEAL from Superior Court, San Benito County; James F. Breen, Judge.

Accounting by Robert Cardiff as administrator with the will annexed of the estate of Robert Smith. From the decree made, the administrator and Mary Smith, widow of testator, appeal. Affirmed.

Briggs & Hudner for appellants; Montgomery & Jefferson for respondent.

VANCLIEF, C.—Robert Smith, who died April 31, 1892, disposed of all his property by his last will as follows: "I give and bequeath to my daughter, Mrs. Mary Cardiff, now of San Benito county, California, a life estate in my home ranch in San Benito county, California, the same being described as follows, to wit, being the southwest quarter of section 6, township 15 south, range 7 east, M. D. M.; also all live stock, farming utensils, household furniture, and in fact all personal property that may be on the said ranch, excepting money on hand, securities, and other evidences of money due me; to have and hold and use during her natural life as her own, and at her death to pass in fee to her sons, Robert Cardiff and Geo. H. Cardiff, and to their heirs in fee simple. But, in the event I survive my said daughter, Mary Cardiff, then, at my death, said property to pass directly to her said sons, Robert and George Cardiff. This bequest, however, is not to take effect during the lifetime of my wife, Mary Smith, who is now residing with me on the above-described property. In the event she survives me, she is to have full and free use and absolute control of said real property and personal herein referred to, and after her

---

[1] Cited in the note in 92 Am. St. Rep. 705, on when a widow is by a will required to elect between its benefits and her right to dower or in the community property.

death to pass as above provided. This is made with full knowledge of property rights of husband and wife, and with the knowledge and 'consent of my said wife.' " The will further bequeathed one dollar to each of four grandchildren of the testator, and the residue of testator's personal property, consisting of money and securities, as follows: To his son William R. Smith, four-tenths thereof; to his son John A. Smith, three-tenths thereof; and to his daughter Jessie Smith, three-tenths thereof. The will nominated said William R. and John A. joint executors thereof, and on May 2, 1892, they were duly appointed as such by the probate court. Both qualified and entered upon the performance of the duties of the trust, but both died before the settlement of their final account—John A., October 19, 1892, and William R., June 25, 1893, though the latter had filed an account which purported to be a final account, on June 1, 1893. On July 22, 1893, Robert Cardiff, son of Mary Cardiff, and grandson of the testator, was appointed administrator with the will annexed, who, on December 18, 1893, filed his final account, and his petition representing that the estate was in condition to be closed, and praying that his final account be allowed, and that the estate be distributed. While the matter of settling the final account of the administrator was pending, to wit, January 31, 1894, Mary Smith, widow of the testator, filed in the probate court her written claim and notice that all the property of which the testator died seised or possessed was community property, and that she claimed one-half thereof as not subject to testamentary disposition by her late husband. The widow of John A. Smith, as executrix of his estate and as heir of her husband, filed written objections to the final account of the administrator, and also objections to the claim of Mary Smith to one-half of the estate of the testator, alleging that Mary Smith had elected to take under the will, etc. The court, after settling the final account of the administrator, found that all the property of the testator was community property of husband and wife, but that the wife of the testator (Mary Smith) had elected to take under the will, and that she had so taken, and had sold, conveyed, and released to Robert Cardiff and George H. Cardiff, her grandsons, who were also reversionary devisees of all the estate devised and bequeathed to their mother (Mary Cardiff)

and to their grandmother (Mary Smith) during their lives; and thereupon the court decreed that the whole estate be distributed in strict accordance with the will. The administrator, Robert Cardiff, and Mary Smith, widow of the testator, appeal from the order settling the administrator's final account, and also from the decree of distribution.

The appeals come here on the judgment-roll, consisting of the final account as rendered by the administrator, the petition of the administrator for the allowance of his account and for distribution of the estate, the written objections to the account, the written notice of Mary Smith that she claimed one-half of the entire estate, the written findings of the court, the order of the court settling the administrator's final account, and the decree of distribution: Estate of Isaacs, 30 Cal. 106; Estate of Page, 57 Cal. 240; Miller v. Lux, 100 Cal. 609, 35 Pac. 345, 639. There is no bill of exceptions, nor any statement of evidences, though it appears that the findings of fact are based upon evidence produced by the parties. Therefore the findings of fact, at least so far as they are self-consistent, must be accepted as true. The appellants contend that the court erred in distributing the property according to the will of Robert Smith to the prejudice of the right of appellant Mary Smith to one-half of all the property, real and personal, described in the will. In support of this point they claim that the language of the will does not sufficiently evince an intention of the testator to devise more than his own half of the community property to overcome the presumption to the contrary, as held in the cases of In re Gilmore, 81 Cal. 240, 22 Pac. 655, In re Gwin's Estate, 77 Cal. 313, 19 Pac. 527, and Estate of Silvey, 42 Cal. 210. But I think this is a mistake, and that the language of the will clearly indicates the intention of the testator to dispose of all the property therein described, including the interest of his wife. On the construction given it by appellants, no single provision of the will as expressed can be executed without disturbing and partly defeating all others. Besides, it is expressly stated that the will "is made with full knowledge of property rights of husband and wife, and with the knowledge and consent of my said wife." This indicates very clearly that he actually knew what he is presumed to have known, namely, the law governing the rights of husband and wife as to com-

munity property; and that he intended to dispose of her interest in the property in a way which would not be valid without her consent. And, conceding that this would not be competent evidence of her consent, it is nevertheless competent and satisfactory evidence of his intention specifically to dispose of each parcel of property described in the will.

It is contended, however, that the widow never elected to take, and never did take, under the will. But, as above shown, the findings of the court below are conclusive upon these points. As to her election, that court found the naked ultimate fact "that said Mary Smith, widow of said Robert Smith, has elected to take under said will"; and also the probative fact that after the death of her husband, and prior to January, 1894, she said to Robert Cardiff that "she wished the will to stand." As to the actual taking of the property under the will the court found: "That since the death of said Robert Smith said Mary Smith, his widow, conveyed all her interest in said property, mentioned in said will as vesting a life estate therein upon said widow, to Robert and George Cardiff. . . . . She has remained in possession of said real property, and said personal property upon and about said real property, being the property described in the will as bequeathed to her a life estate, until the year 1893, when she conveyed all her interest therein as hereinbefore stated." It should be observed here that Mary Cardiff, to whom was devised the second life estate in the land and personal property thereon, died after the death of the testator, so that her life estate never vested; and therefore, the effect of the conveyance or release of the life estate of Mary Smith to Robert and George Cardiff, the reversioners in fee, was to invest them with the absolute title to all the land and personal property thereon under the will. But if the will is not valid as to the widow's half of that property, then her life estate and the reversion to Robert and George Cardiff were restricted to the testator's half of the land and personal property thereon. Another effect of restricting the will to the testator's half of the property would be to deprive William R., John A., and Jessie Smith of one-half of the specific legacies bequeathed to them. I think the findings of fact bring this case under the rule announced in the case of Morrison v. Bowman, 29 Cal. 347, affirmed in Noe v. Splivalo, 54 Cal. 207. In the

former of these cases Mr. Justice Curry, after reviewing the authorities, stated the rule as follows: "A testamentary provision in lieu of a devisee's or legatee's proprietary right, in order to render it such upon acceptance of it, must be declared in terms to be given in lieu of such right; or that intention must be deduced by clear and manifest implication from the will, founded upon the fact that the claim to such proprietary right would be inconsistent with the will, or so repugnant to its dispositions as to disturb and defeat them. . . . . The intention of the testator must be kept in view as the pole star in the construction or interpretation of his will; and it is not to be presumed, in the absence of a manifest intent on his part, that he designed to make disposition of any property not his own. But when it does so appear, and the owner of such property accepts a legacy or devise under the will, which acceptance necessarily operates to give effect to the will as an entire disposition by the testator, such acceptance must, by the conditions on which it is founded, be held to be a confirmation of the dispositions of the will." None of these cases cited by appellant conflict with that of Morrison v. Bowman. I think the order settling the administrator's final account and the decree of distribution should be affirmed.

We concur: Searls, C.; Temple, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order settling the administrator's final account and the decree of distribution are affirmed.