[S. F. No. 3746. In Bank.—April 4, 1904.]

## TOWN OF MILL VALLEY et al., Petitioners, v. A. L. HOUSE, Treasurer, etc., Respondent.

MUNICIPAL BONDS FOR STREET WORK—CITY OF SIXTH CLASS—MUNICIPAL IMPROVEMENT ACT NOT REPEALED BY IMPLICATION.—Under the Municipal Improvement Act of 1901 (Stats. 1901, p. 27), municipal bonds may be issued for street work by a city of the sixth class. That act was not repealed by implication by the "Local Improvement Act," passed by the same legislature a few days later (Stats. 1901, p. 34), which is not necessarily repugnant thereto, and does not cover the same ground as the earlier statute. Repeals by implication are not favored; and the two statutes should be construed as standing together, and as offering different schemes for similar ends.

ID.—VOTE FOR BONDS FOR VARIOUS PURPOSES—BONDS FOR TOTAL AMOUNT.—Where, under a municipal ordinance, several propositions for bonds in a specified sum for street purposes, in another sum for fire apparatus, in another for sewers, and in another for bridges, were submitted to the voters, and were each and all carried by the electors, there was nothing in the law, or in principle, and

nothing affecting the interest of the taxpayers, to prevent the municipality from issuing a total amount of bonds for the aggregate sum, payable in accordance with the terms of the ordinance and of the Municipal Improvement Bond Act.

ID.—MANDAMUS TO TREASURER—DUTY UPON SALE OF BONDS.—A writ of mandate will lie to compel the treasurer of the municipality to countersign the bonds issued for the aggregate sum; but it will be his duty, upon sale thereof, to place the moneys in the municipal treasury to the credit of the proper improvement funds.

APPLICATION for Writ of Mandate to the Treasurer of the Town of Mill Valley, County of Marin.

The facts are stated in the opinion of the court.

Joseph K. Hawkins, for Petitioners.

C. W. Durbrow, for Respondent.

HENSHAW, J.—This is an application for mandate against the respondent, as treasurer of the town of Mill Valley, to compel him to countersign certain municipal bonds and the interest coupons attached thereto. He justifies his refusal upon the ground that the bond issue is illegal and void. The propositions presented by him in this regard are two.

1. The bonds were issued under the Municipal Improvement Act of 1901. (Stats. 1901, p. 27.). The earlier act of 1889 contained no provision for the doing of "street work." The act of 1901 expressly empowers the authorities to issue bonds for "street work." The act of 1889 came under review in the *City of Redondo Beach* v. *Cate,* 136 Cal. 146, and it was there held that that act did not authorize the issuance of bonds which must be paid out of the revenue derived from taxes upon real and personal property, unless the money raised upon the bonds was to be devoted to purposes justifying the expenditure of the ordinary revenues of the city, that the ordinary revenues of a city of the sixth class could not be expended for the grading and paving of its streets, and further that "street work" was not one of the specially enumerated objects for which the act authorized the issuance of bonds. In *Rice* v. *Board of Trustees,* 107 Cal. 398, it was

held that under the provisions of the same act there could be a valid issue of bonds for the construction of a sewer, and in the case of *City of Redondo Beach* v. *Cate,* discussing the Rice case, it was said that this was so ''for the simple reason that under the Vrooman Act it is entirely within the discretion of the governing body of a city to make the cost of a sewer a charge upon the lands of an assessment district, or upon its ordinary revenue''; and that ''the construction of sewers is one of the specially enumerated objects for which the act of 1889 authorizes the issuance of municipal bonds.'' It should be said that in deciding the Cate case the attention of the court was not directed to section 26 of the Vrooman Act as amended in 1891 (Stats. 1891, p. 206), section 2 of the Vrooman Act as amended in 1893 (Stats. 1893, p. 172), and section 869 of the Municipal Government Act, which authorize the authorities to pay for street work out of the ordinary revenue and income of the municipality. The decision in the Cate case, therefore, stands upon the single proposition that the act of 1889 did not specifically embrace ''street work.'' But this objection is wholly removed by the act of 1901, under which these bonds were issued, which expressly provides that the bonds may be issued for this purpose. The authorities were, therefore, justified under the act in calling for bonds for the performance of street work. ''Street work is a phrase of common usage, and has a well-defined signification. The words mean exactly what they indicate upon their face, namely, work upon a street—work in repairing or making a street.'' (*Electric Light Co.* v. *San Bernardino,* 100 Cal. 348.) Nor do we find any force in the argument that the act of 1901 here under consideration was repealed by an act of the legislature passed at the same session, and a few days later, designated the Local Improvement Act. (Stats. 1901, p. 34.) Repeals by implication are not favored. There is no repugnancy between the two acts to compel the conclusion that the latter must be construed as repealing the former; and while the acts deal generally with the same subject-matter the later act does not embrace the ground covered by the earlier. They should properly be construed as standing together and as offering different schemes for the accomplishment of similar ends.

2. Four different propositions were presented to the voters

under the authority of ordinance No. 60 of the town of Mill Valley:—

1. A proposition to incur a bonded debt of thirty-seven thousand dollars for street purposes;

2. A proposition to incur a bonded indebtedness of two thousand dollars to acquire fire apparatus;

3. A proposition to incur a bonded debt of seven thousand dollars for sewers; and,   ·

4. A proposition to incur a bonded debt of four thousand dollars for bridges.

All of these propositions were carried by the electors. The municipal authorities, by ordinance No. 61, passed after the election, provided for the issuance of eighty bonds of $625 each, two of which bonds were to mature each year, so that one-fortieth part of the indebtedness is to be paid each year, and the interest on the bonds is to be paid semi-annually. All of this was in accordance with the terms of ordinance No. 60, and the Municipal Improvement Bond Act. Objection is, however, made to the issuance in this form of the total amount of bonds,—that is to say, municipal bonds in the sum of fifty thousand dollars,—and it is urged that separate bonds should be issued for each of the indicated purposes. We discover nothing in the law, nothing in principle, and nothing affecting the interests of the taxpayers, to require such a course. The ordinance No. 60, calling for the bonds, itself provided that they should be made payable in gold coin in the manner following, that is to say: "One-fortieth part of the whole amount of the principal of said indebtedness created under one or more of the said four propositions shall be paid each and every year." It was impossible at the time for the authorities to determine how many of the propositions would carry, and the language here set forth was an indication to the voter that they proposed to  make a single issue for the aggregate amount of all the bonds authorized to be issued, and to provide for the payment, as the law requires, of one-fortieth part of the indebtedness each year. There is in this no additional burden cast upon the taxpayer, and in fact, as has been said, the issuance of the bonds is in strict accord with the ordinance calling for the special election. (*Darbie* v. *City of Modesto*, 104 Cal. 515.)   The Bond Act of 1889 con-

tained a provision that the ordinance should specify the number of bonds to be issued. This cumbersome and unnecessary provision was eliminated from the Municipal Bond Act under which these bonds were issued. Of course, the money derived from the sale of the bonds will be by the treasurer of the town placed in the municipal treasury to the credit of the proper improvement funds under section 6 of the act here under consideration.

Let a peremptory writ of mandate issue as prayed for.

Shaw, J., Angellotti, J., McFarland, J., Van Dyke, J., and Lorigan, J., concurred.