[S. F. No. 4849. In Bank.—July 30, 1907.]

## CITY OF OAKLAND, Petitioner, v. FRANK R. THOMPSON, as City Clerk of the City of Oakland, Respondent.

MUNICIPAL CORPORATIONS—POWER OF ACQUIRING LAND FOR PARKS—ACTS OF 1889 AND 1901—BONDS.—While there may be no repugnancy between the act of 1889 (p. 361), enabling municipal corporations to acquire, maintain, and improve public parks and boulevards, and the act of 1901 (p. 27), authorizing such corporations to incur indebtedness for municipal improvements, it does not necessarily follow therefrom that the act of 1889 provides the exclusive method by which a municipal corporation may acquire land for park purposes. The essential difference between such acts is in the life of the bonds, the first act providing for twenty-year bonds, and the latter for forty-year bonds.

ID.—CONSTITUTIONAL LAW — LEGISLATURE MAY PRESCRIBE VARIOUS METHODS OF ACQUISITION.—There is no constitutional inhibition forbidding the legislature from providing two independent schemes, to either of which a municipality may have resort as it shall deem expedient in the acquisition of land for park purposes.

ID.—MUNICIPALITY MAY ISSUE BONDS FOR PARKS.—The provision in the act of 1901 empowering a city to bond itself for the acquisition "of any municipal improvement," including any "property . . . necessary or convenient to carry out the objects, purposes, and

powers of the municipality," authorizes the issuance of bonds for the acquisition of land for public parks.

ID.—CITY OF OAKLAND—CHARTER.—Section 31 of article III of the charter of the city of Oakland (Stats. 1889, p. 524) expressly contemplates the exercise by the city of the power to acquire land for public parks.

ID.—PURCHASE OF DISTINCT TRACTS — ELECTION — PROPOSITION TO BE VOTED ON.—Where the scheme of the city had in contemplation the acquisition of several distinct parcels of land widely separated for park purposes, the object to be accomplished was single in its purpose, and under the act of 1901 the municipal authorities had discretion to submit at the special election held under the act the question of the acquisition of all of such lands as a single proposition to be voted on.

APPLICATION for a Writ of Mandate directed to the City Clerk of the City of Oakland.

The facts are stated in the opinion of the court.

J. E. McElroy, City Attorney, for Petitioner.

Allen & Walsh, and Ben F. Woolner, for Respondent.

HENSHAW, J.—This is a petition for mandate against the respondent, who is city clerk of the city of Oakland, to compel him as such official to countersign certain municipal bonds of petitioner. The proceedings culminating in the voting of the bonds are set forth in full.

The respondent pleads by demurrer, and admits the due performance of all the acts taken by the officers of the city, and admits likewise the regularity and sufficiency of the election proceedings and of the election. He bases his refusal to countersign the bonds upon two grounds—1. That the proceedings culminating in the special election whereat the bonds were voted were had under a statute not applicable to the purpose; and 2. That the election, calling as it did for the acquisition of certain detached pieces and parcels of land for public parks, was irregular and void in this: that each piece and parcel of land proposed to be purchased should have been submitted to the voters to be voted upon as a separate and distinct proposition; whereas, by the method adopted, it was made necessary for the voters to vote for or against the acquisition of all of these detached parcels as a single unit.

1. Under the first objection it is contended that the proceedings should have been had, the election called, and the bonds issued under an act of the legislature entitled "An act to enable incorporated cities and counties, and towns to acquire, maintain, and improve public parks and boulevards." (Stats. 1889, p. 361.) In fact, the proceedings were had under the authority of the act of 1901, entitled "An act authorizing the incurring of indebtedness by cities, towns, and municipal corporations for municipal improvements, and regulating the acquisition, construction, and completion thereof." (Stats. 1901, p. 27.) It is argued that the act of 1889 deals expressly with the subject-matter of the petitioner's bond election; that there is no repugnancy between it and the later act of 1901, which is general in its nature, and that it must be held, therefore, that the legislature in the act of 1889 has set forth the single and controlling method whereby municipalities may acquire lands for park and boulevard purposes. It may freely be conceded that no repugnancy exists between the act of 1889 and the act of 1901, but it does not necessarily follow therefrom that the act of 1889 provides the sole and exclusive method by which a municipal corporation may acquire land for park purposes. Thus, if it shall be determined that the act of 1901 is in its scope broad enough to include the acquisition of lands for park and boulevard purposes, there is no constitutional inhibition forbidding the legislature from providing two independent schemes, to either of which a municipality may have resort as it shall deem expedient. Indeed, the essential difference between the act of 1889 and that of 1901 is in the life of the bonds, the act of 1889 providing for twenty-year bonds, and that of 1901 for forty-year bonds. One city might consider it to be more to its advantage to use the longer-term bonds, while another might be of contrary opinion, and, as we have said, there is no constitutional or other objection which prevents the legislature from giving cities their option and choice in this matter.

The language of the act of 1901 is certainly general enough to empower a city to purchase lands for park and boulevard purposes. It declares: "Whenever the legislative branch of any city, town or municipal corporation shall, by resolution passed by vote of two thirds of all its members and approved by the executive of said municipality, determine that the

public interests or necessity demands the acquisition, construction or completion of any municipal improvement, including bridges, waterworks, water-rights, sewers, light or power works or plants, buildings for municipal uses, schoolhouses, fire apparatus, and street work, or other works, property, or structures necessary or convenient to carry out the objects, purposes and powers of the municipality.''

Herein is a declaration empowering a city to bond itself for the acquisition ''of any municipal improvement,'' including the acquisition of any ''property . . . necessary or convenient to carry out the objects, purposes, and powers of the municipality.'' It will not be questioned but that the acquisition of parks is, without any express words of authorization, included whenever a grant of power is conferred to acquire property for ''municipal purposes.'' (*Law* v. *San Francisco,* 144 Cal. 384, [77 Pac. 1014]; *City of Lexington* v. *Kentucky etc. Assembly,* 114 Ky. 781, [71 S. W. 943]; *In re Mayor etc.,* 99 N. Y. 569, [2 N. E. 642]; *In re North Terrace Park,* 147 Mo. 259, [48 S. W. 860].) But in addition to this the charter of the city of Oakland expressly contemplates the exercise of this power, when in section 31 thereof it declares that ''The council shall have power to pass ordinances . . . 40, to acquire lands for public parks and to improve and maintain such lands for the benefit of all the inhabitants of the city. (Charter of the City of Oakland, art. III, sec. 31; Stats. 1889, p. 524.)

The effort of respondent to limit the scope of the act of 1901 to enumerated matters under the rules of *noscitur a sociis* and *expressio unius* is untenable. The language ''including bridges, waterworks, water-rights, sewers, light or power works, or plants, buildings for municipal purposes, schoolhouses, fire apparatus,'' is more obviously designed to include in the phrase ''municipal improvement'' subject-matters concerning which doubt might be entertained as to their proper place in such a category than to limit the kind of public improvements to those specifically designated. Thus, to illustrate, while it would be unhesitatingly said that a sewer, or a bridge, or buildings for municipal use, were public improvements, it might be debatable in a town adequately supplied with light by a quasi-public corporation whether the acquisition of a lighting plant by a city could in strictness be denominated a

public improvement, and it was to relieve from any necessity of construction that light-works, power-works, waterworks, and water-rights were expressly enumerated. It was thus not designed to limit the meaning of the phrase ''municipal improvements,'' but rather to broaden its scope to include any of these matters which might otherwise be considered doubtful.

2. The second objection urged by the respondent is equally untenable. The scheme had in contemplation the acquisition of several distinct parcels of land widely separated, to be converted into separate parks for the enjoyment of all the inhabitants of the city. The scheme is a single scheme, the purpose a single purpose, and came clearly within the authority of the act of 1901, which provides that the proper authorities may ''call a special election and submit to the qualified voters of said city, town, or municipal corporation, the proposition of incurring a debt for the purposes set forth in said resolution.'' The law does not contemplate, much less compel, that each piece and parcel of land which may be desired for a park should be voted upon separately. The plan is a single plan for the acquisition of all of these lands for park purposes, and in recognition of the jealousies which so often arise in wards and sections of a municipality it may easily be believed that it would be disastrous to the municipal scheme if the other course were adopted,—the jealousies of the inhabitants of one section prompting them to vote for lands for a park if it were to be situated in their own district, and to vote against it if it were not,—thus rendering it difficult, if not impossible, for the city ever to acquire park lands at all. Certainly the plan adopted was within the discretionary power of the council under the law, and it enabled every voter to express himself as being for or against the whole proposition. More than this was not required.

It appearing, therefore, that the objections of the respondent are untenable, it is ordered that a peremptory writ of mandate issue, directing him forthwith to countersign petitioner's bonds as prayed for.

Lorigan, J., McFarland, J., Shaw, J., Sloss, J., and Beatty, C. J., concurred.