[S. F. No. 4975. In Bank.—March 28, 1908.]

## CITY OF SAN DIEGO, Petitioner, v. DANIEL POTTER, as Auditor of the City of San Diego, Respondent.

MUNICIPAL CORPORATIONS—BONDED INDEBTEDNESS—ACT OF FEBRUARY 25, 1901—PURPOSES FOR WHICH BONDS MAY BE ISSUED.—Under the act of February 25, 1901 (Stats. 1901, p. 27), authorizing the incurring of indebtedness by municipal corporations, municipal bonds cannot be issued except for a purpose for which the ordinary revenues of the city might be lawfully expended.

ID.—STREETS, HIGHWAYS, AND BOULEVARDS—BONDS MAY BE ISSUED FOR BUILDING—PARK AND BOULEVARD ACT.—The building and construction of streets, highways, and boulevards are objects for which the legislative body of a city or town may, in their discretion, expend the ordinary revenues of the city (Vrooman Act, sec. 26), and for that reason fall within the purposes for which bonds may be issued under the act of 1901, and are also included in the term "street work" used in said act, which means "work upon a street," either in repairing or making it. And bonds of the municipality may be issued for these purposes under the act of 1901, notwithstanding the existence of the Public Park and Boulevard Act of March 19, 1889 (Stats. 1889, p. 361). If, however, there be included with these authorized purposes an unauthorized purpose, for the whole of which a single aggregate sum is specified, it is impossible to separate the good from the bad, and the whole must fall.

ID.—LAND FOR STREETS, HIGHWAYS, AND BOULEVARDS—CITY OF SAN DIEGO.—The city of San Diego, under the provisions of its charter, and the general laws of the state thereby made applicable to such matters, to wit, the act of 1889, p. 70, and the act of 1903, p. 376, is authorized to pay the whole cost of land to be used for roads, streets, highways, or boulevards from the ordinary revenues of the city, if they deem the improvement of such general benefit to the city that the whole city constitutes the district to be benefited thereby, and may issue municipal bonds therefor, under the act of 1901, notwithstanding the existence of the Public Park and Boulevard Act of March 19, 1889.

ID.—SUBMISSION OF UNAUTHORIZED PROPOSITION—ELECTION.—Under the act of 1901, the mere submission of a proposition to incur a bonded indebtedness for a purpose not authorized by the act at an election held under the act, does not have the effect to invalidate the election as to all other authorized propositions then submitted.

ID.—PUBLIC PARK.—Under the act of 1901, a municipality has the power to incur a bonded indebtedness for the purpose of acquiring land for a public park.

ID.—DESIGNATION OF ACT UNDER WHICH BONDS ARE ISSUED.—Where the provisions of the act of 1901 as to notice, etc., were literally complied with in the proceedings leading up to the issuance of the bonds, such proceedings were not invalidated for the failure of the city council to designate in the ordinance calling the election, or in some order or record prior to the election, whether the bonds proposed for boulevards and parks were to be issued under the Park and Boulevard Act of 1889 or the general act of 1901. There is nothing in the law requiring such designation.

ID.—SERIAL PAYMENT OF BONDS—ORDER OF PAYMENT.—Where a certain indebtedness authorized by the electors was for the sum of $59,108.55, a subsequent ordinance providing that such indebtedness should be evidenced by one hundred and nineteen bonds, one hundred and eighteen of which should be of the denomination of five hundred dollars and one of $108.55, the five-hundred-dollar bonds to be numbered from 1 to 118 consecutively, and the $108.55 to be numbered 119, and also that "three of said bonds shall be due and payable annually . . . the order of payment beginning with the smallest numbered bond and continuing from the less to the greater until all of said bonds shall have been paid," is in compliance with section 5 of the act of 1901, requiring the legislative body of the municipality to provide for the annual part payments of the bonds in sums not less than one-fortieth part of the whole amount of the indebtedness.

APPLICATION for a Writ of Mandate directed to the Auditor of the City of San Diego.

The facts are stated in the opinion of the court.

CLIII Cal.—19

George Puterbaugh, City Attorney, for Petitioner.

Sam Ferry Smith, and O'Melveny, Stevens & Millikin, *Amici Curiæ,* for Respondent.

ANGELLOTTI, J.—This is an application for a writ of mandate to compel defendant to perform certain ministerial acts relative to certain municipal bonds of plaintiff. It is. conceded that he is bound to perform these acts if the bonds are not void, and defendant's refusal to so perform is based on the contention that they are void.

The bonds were issued under the act of the legislature enacted in the year 1901, entitled, "An act authorizing the incurring of indebtedness by cities, towns, and municipal corporations for municipal improvements, and regulating the acquisition, construction, or completion thereof" (Stats. 1901, p. 27,) and admittedly all the proceedings were in strict accord with the provisions of that act except as hereinafter noted.

Seventeen separate matters were specified in the resolution adopted by the common council expressing the determination of the council as to the public interest and necessity, with a statement of the estimated cost of each, and the ordinance subsequently adopted calling a special election submitted to the electors seventeen separate propositions for incurring a bonded indebtedness, one proposition as to each of the matters specified in the former resolution. Each of fourteen of these propositions received at such special election the requisite number of votes to carry it, and the bonds were issued thereon. The other three propositions were defeated. It is claimed that among the seventeen propositions submitted at this election there were three which were not authorized to be submitted by the provisions of the act (two of which were carried), and that the effect of including the same was to render the election a nullity as to all the propositions submitted.

The propositions attacked are the following:—

"Fourth: Shall the city incur a bonded indebtedness of seventy thousand dollars other and different than any other indebtedness proposed in this ordinance, for the extension and improvement of the street and highway system of the

city, all as shown in this said resolution and in the recital thereof in the preamble of this ordinance?'' In such resolution and preamble the matter is stated thus: ''IV. The building, construction and acquisition of the following lines of boulevards in said city, namely:''—followed by a designation and general description of various boulevards, and a statement of the estimated cost of each.

''Fifth: Shall the city incur a bonded indebtedness of five thousand dollars other and different than any other indebtedness proposed in this ordinance, for the building, construction and acquisition of a road from the intersection of 'M' and Thirty-second streets to Mount Hope Cemetery, all as shown in the said resolution and in the recital thereof in the preamble of this resolution?'' In such resolution and preamble the proposition is put in the same way, except that after the words ''Mount Hope Cemetery'' the following is stated: ''together with the acquisition of the land on which such road may be located, according to the survey thereof made by the city engineer of said city, and filed with the city clerk thereof,'' etc.

''Seventeen: Shall the city incur a bonded indebtedness of five thousand dollars, other and different than any other indebtedness proposed in the ordinance, for the construction of three public lavatories to be hereafter located in the city,'' etc.

The fourth and fifth propositions may be considered together. It is established by the decision of this court in *Redondo Beach* v. *Cate,* 136 Cal. 146, [68 Pac. 586], that the general act of March 19, 1889 (Stats. 1889, p. 399), did not authorize the issuance of bonds except for a purpose for which the ordinary revenues of the city might be lawfully expended. This doctrine has not been modified by any subsequent decision. The act of February 25, 1901, is the same as the general act of March 19, 1889, in every respect material to this question, and is not susceptible of a different construction. If, therefore, any proposition included a purpose for which the ordinary revenue of the city could not be used, it was not authorized by the act of 1901. It is clear that the fifth proposition included in addition to the building and construction of the road to Mount Hope Cemetery, the acquisition of the land on which the road was to be located. We think it is equally clear that the fourth proposition included

not only the building and construction of certain boulevards, but also the acquisition of the land upon which at least some of them were to be constructed. The term ''acquisition'' used in relation to the boulevards, is certainly broad enough to include the obtaining of the lands upon which they are to be laid out. The building and construction of streets, highways, and boulevards are objects for which the legislative body of a city or town may, in their discretion, expend the ordinary revenues of the city (Vrooman Act, sec. 26), and for that reason fall within the purposes for which bonds may be issued under the act of 1901, besides being included in the term ''street work'' used in said act, which has been defined to mean ''work upon a street—work in repairing or making a street.'' (See *Mill Valley* v. *House,* 142 Cal. 700, [76 Pac. 658].) And bonds may be issued for those purposes under the act of 1901, notwithstanding the existence of the Public Park and Boulevard Act of March 19, 1889. (Stats. 1889, p. 361.) (See *City of Oakland* v. *Thompson,* 151 Cal. 572, [91 Pac. 387].) But if there be included with these authorized purposes an unauthorized purpose, for the whole of which a single aggregate sum is specified, it is impossible to separate the good from the bad, and the whole must fall. Defendant's claim in this regard is that there is no law that authorizes the common council of the city of San Diego to pay for the land to be used for roads, streets, highways, or boulevards, from the ordinary revenues of the city. This claim does not appear to us to be well founded. The city charter expressly empowers the council to widen any road, and to open or lay out any new street or highway through public or private property, and makes the general laws of the state relative to such matters applicable. The general laws applicable appear to be the act of 1889 (Stats. 1889, p. 70), and the act of 1903 (Stats. 1903, p. 376), under either of which it was the right of the city to proceed. (Stats. 1903, sec. 36, p. 386.) As is claimed by learned counsel, the act of 1889 does provide for the payment of the expenses of acquiring the necessary land, etc., from a fund to be collected by an assessment upon the property of the district benefited thereby, but the effect of section 22 thereof clearly is to authorize the council to pay the whole thereof from the ordinary revenues of the city, if they deem the improvement of such general benefit to the

city that the whole city constitutes the district to be benefited thereby. The section is practically the same in effect in the respect under discussion as section 26 of the Vrooman Act, authorizing the council to pay the whole or any portion of the cost of street work out of the ordinary revenues of the city. We are of the opinion that this is a complete answer to the objection made by learned counsel to the fourth and fifth propositions, based upon the decision of this court in *Redondo Beach* v. *Cate*, 136 Cal. 146, [68 Pac. 586], the propositions being for certain designated boulevards and roads which the council had in effect declared to be of such general benefit to the city that the city should pay the whole cost thereof. These propositions were, therefore, within the act of 1901, and this is true notwithstanding the existence of the Public Park and Boulevard Act. (*City of Oakland* v. *Thompson*, 151 Cal. 572, [91 Pac. 389].)

The seventeenth proposition, the proposed issuance of bonds for five thousand dollars for the construction of three public lavatories, was not carried at the election, and no bonds have been issued thereon. The question whether it was an authorized proposition under the act of 1901 is, therefore, important only in the event that it be held that the submission of a proposition for an indebtedness not authorized by the act at an election held under the act, would invalidate the election as to all the other propositions submitted. The contention to this effect is based on the language of the act, which, after providing that the legislative body of the municipality, having first determined by resolution that the public interest or necessity demands the acquisition, construction, or completion ''of any municipal improvement, including bridges, waterworks, water-rights, sewers, light or power works or plants, buildings for municipal uses . . . street work, or other works, property or structures necessary or convenient to carry out the objects, purposes and powers of the municipality,'' provides that such legislative body may at any subsequent meeting, call a special election, and submit thereat "the proposition of incurring a debt for the purpose set forth in said resolution, and no question other than the incurring of the indebtedness for said purpose shall be submitted; provided that propositions of incurring indebtedness for more than one object or purpose

may be submitted at the same election." The proviso as to
different propositions being submitted at the same election
was enacted for the first time in the act of 1901, the former
act covering the same subject-matter, that of March 19, 1889
(Stats. 1889, p. 399), not containing any such proviso. The
proviso was not essential to the proper submission at the
same election of more than one of the propositions included
in the act, for without it the act clearly permitted such sub-
mission, and such was undoubtedly the practice under the
former act. (See *Derby* v. *Modesto,* 104 Cal. 515, [38 Pac.
950]; *City of San Luis Obispo* v. *Haskin,* 91 Cal. 549, [27
Pac. 929].) It is to be noted that the former act, without
the proviso, provided, immediately after the limitation above
quoted, that "the ordinance calling such special election shall
recite the *objects* and *purposes* for which the indebtedness
is proposed to be incurred," which is a confirmation of this
construction of the previous language. We cannot assume
that the object of the insertion of the proviso in the act of
1901 was simply to authorize that to be done which was
already fully authorized by the language of the former act.
It appears clear to us that the object of the proviso was to
limit the prohibition immediately preceding by making it
inapplicable to any proposition of incurring indebtedness.
This is the plain literal meaning of the language used in the
limitation and proviso, and such meaning appears to us to
give full effect to the legislative purpose. The argument of
learned counsel that the purpose of the prohibition was to
secure a free and fair expression of the will of the voters
on the propositions for indebtedness, unaffected by the con-
sideration of other questions, and without the opportunity of
political trades and combinations that would be afforded by
the submission at the same time of other propositions may be
conceded to be well based, but as we view the language of
the act it must be held that the legislature deemed that this
purpose would be sufficiently attained by a limitation of the
electors to a consideration of propositions for indebtedness,
unembarrassed by the consideration of propositions of a dif-
ferent nature. It will be noted that the act of 1901 is broad
enough in terms to include the issuance thereunder of bonds
for practically every kind of municipal improvement that a
city is empowered to make by the law applicable to it, and

it can hardly be assumed in the face of language admittedly permitting the submission at the same election of propositions for indebtedness for the many different purposes authorized by the act, that the legislature was in any degree seeking to avoid possible evils resulting from the submission at one time of many different propositions for indebtedness. We cannot see that the fact that a proposition for indebtedness submitted is one for an indebtedness which the city has no power to incur affects the question at all. Although unauthorized, it is nevertheless a proposition of incurring indebtedness, the submission of which is not prohibited by the prohibitory clause relied on, and, therefore, its submission does not invalidate the election as to the remaining authorized propositions. In view of our conclusion upon this point, it is unnecessary to determine whether the city of San Diego had the power to expend municipal funds for "public lavatories."

The demurrer of defendant also makes the point that a proposition for a bonded indebtedness of twenty-five thousand for the acquisition of a park was unauthorized. This proposition was, like the public lavatory proposition, defeated at the election. What we have said in regard to the lavatory proposition is applicable to this. However, in view of the decision in *City of Oakland* v. *Thompson,* 151 Cal. 572,. [91 Pac. 387], it must be held that the proposition for this indebtedness was properly submitted under the act of 1901.

We see no force in the contention that the proceedings for the issuance of the bonds are void for failure on the part of the council to designate in their ordinance calling the election, or in some order or record prior to the election, whether the bonds proposed for boulevards and parks were to be issued under the Park and Boulevard Act of 1889, or the general act of 1901. It seems to us that it was apparent on the face of the record that the proceeding was one under the act of 1901, but whether this be so or not, it is clear that the provisions of the act of 1901 as to notice, etc., were literally complied with, and that there is nothing in the law requiring the designation referred to.

The only other objection made is one to the ordinance adopted after the election providing for the issuance of the

bonds. The act of 1901 provides in section 5, that bonds issued under the act shall be payable substantially in the manner following: "A part to be·determined by the legislative body of the municipality, which shall be not less than one-fortieth part of the whole amount of such indebtedness, shall be paid each and every year on a day and date, at the city treasury, to be fixed by the legislative branch of the municipality," etc. As to the bonds to be issued in the sum of $59,108.55 for a certain indebtedness authorized by the electors, the ordinance provided that there should be 119 of said bonds, 118 of which should be of the denomination of five hundred dollars, and one of the denomination of $108.55, the five hundred· dollar bonds to be numbered from 1 to 118 consecutively, and the $108.55 bond to be numbered 119, and also: "Three of said bonds shall become due and payable annually at the time and in the manner hereinafter specified, the order ·of payment beginning with the smallest numbered bond and continuing from the less to the greater until all of said bonds shall have been paid." It is said that as 119 is not a multiple of three, it would be impossible for the ministerial officers charged with the duty of preparing the bonds to prepare them so as to make them payable three each year. We see no room for misunderstanding as to the requirement of the ordinance in this regard. What it means and provides is that the 119 bonds shall be so prepared that commencing with the smallest numbered bond three shall become due and payable each year, leaving two to become due and payable the last or fortieth year.

We have now noticed all of the objections made by counsel to the bonds, and are of the opinion that none is well based. It follows that plaintiff is entitled to the relief sought.

Let a peremptory writ of mandate issue in accord with the prayer of the petition.

Shaw, J., Sloss, J., Henshaw, J., Lorigan, J., and Beatty, C. J., concurred.

NOTE.—Mr. Justice McFarland, not having heard the argument in this case, does not participate herein.