[Civ. No. 3634.   Second Appellate District, Division One.—May 19, 1921.]

## THE BOARD OF EDUCATION OF THE CITY OF SANTA ANA, Petitioner, v. T. D. TALBERT, as Chairman, etc., Respondent.

[1] STATUTORY CONSTRUCTION—DIFFERENT ACTS ON SAME SUBJECT.—Where two statutes dealing with the same subject are not repugnant in their provisions, both should be given effect.

[2] SCHOOL LAW—ISSUANCE OF BONDS—ACT OF 1909—ALTERNATIVE METHOD.—The act of March 20, 1909 (Stats. 1909, p. 526), regulating the issuance of bonds of school districts in cities of the fifth class, is not repugnant to the provisions of section 1880 et seq. of the Political Code, which contain a complete scheme under which bonds of school districts may be issued, but merely provides for an alternative method, notwithstanding it provides for a higher rate of interest on the bonds and contains no provision for the insuring of buildings or that the bonds· may be payable in lawful money, as well as gold coin.

APPLICATION for a Writ of Mandate to compel signing of school bonds.   Granted.

The facts are stated in the opinion of the court.

L. A. West for Petitioner.

O'Melveny, Millikin & Tuller for Respondent.

JAMES, J.—In this proceeding petitioner asks for a writ of mandate to compel respondent chairman of the board of supervisors of Orange County to sign certain bonds in the amount of seventy-five thousand dollars.   On the ninth day of February, 1921, petitioner, as the governing board of the Santa Ana school district (the city of Santa Ana being a city of the fifth class), adopted a resolution

52 Cal. App.—42

calling an election for the purpose of having submitted to the electors of said district the question as to whether bonds in the amount mentioned should be issued. Due notice was given of said election, the election was held, a favorable vote was obtained on the proposition to issue the bonds, and return made to the board of supervisors of the various steps taken and proceedings had. All of such proceedings were had and taken in strict compliance with the provisions of section 1880 et seq. of the Political Code. The petition fully set out the facts and the exhibits attached thereto substantiated the statements made in the petition. Respondent, in answer to the prayer for the writ, makes return admitting the facts and raising the issue of law that petitioner, upon the case made by the petition, is not entitled to the writ. It is admitted that by the sections of the Political Code a complete scheme is provided under which bonds of school districts may be issued, but respondent contends that the act of the legislature approved March 20, 1909 (Stats. 1909, p. 528), which act is entitled "An act to regulate the issue of bonds of school districts in cities of the fifth class, and school districts partly within and partly without such cities of the fifth class," is controlling, and that in so far as such districts are concerned the general law, as embodied in the Political Code sections, can have no application. In the first place, it is contended that the act of 1909 is exclusive because the scheme therein outlined is inconsistent in material respects with the general plan provided for in the Political Code. It is true that there are some differences between the statutes. The general requirements as to the calling of the election, the giving of notice, and the holding of the election are the same. While the Political Code sections fix the maximum rate of interest which bonds are entitled to bear at six per cent, the act of 1909 provides that they may bear as much as eight per cent. Section 1885 of the Political Code declares that if the notice calling the election shall have provided that the bonds and interest be payable in gold coin of the United States, the bonds when issued shall be made so payable, but if no such expression shall be used in the notice, the bonds may be payable in "gold coin" or "lawful money," as the board of supervisors, shall order. In the act of 1909 it is

provided that the bonds shall be payable "in gold coin."
The purposes for which bonds may be issued by a school
district, as the same are specified in Section 1880 of the
Political Code, are precisely the same as those enumerated
in the act of 1909, except that in the latter act the words
"for insuring school buildings" are omitted. Petitioner
insists that the plan adopted by the Santa Ana school dis-
trict under the code sections is fully authorized for two
reasons: First, because the provisions of the act of 1909
are not repugnant to provisions of the Political Code,
hence the latter. act provides not an exclusive scheme but
an alternative one; second, that if such repugnancy exists,
then the act of 1909 should be held to be unconstitutional
because it is special legislation. If the conditions imposed
by the act of 1909 were more restrictive than those ex-
pressed in the provisions of the Political Code, it might
well be concluded that it was the intention to make the
former, in its application to school districts in cities of
the fifth class, exclusive. As has already been suggested,
no such restrictive features are shown in the act of 1909,
except that the alternative to make the bonds payable in
"lawful money" instead of "gold coin" is not allowed;
and the item, that among the authorized purposes the act
of 1909 omits to mention, "for insuring school buildings."
In its general import the act of 1909 seems to have been
intended to extend the privileges of the school districts
included within the class mentioned, rather than to re-
strict. the power given in any substantial sense. This is
particularly evidenced by the provision permitting bonds
to be authorized carrying an eight per cent interest charge,
where under the Political Code a maximum of six per cent is
all that is allowed. [1] It is a uniform rule of statutory
construction that where two statutes dealing with the same
subject are not repugnant in their provisions, both shall be
given effect. In harmony with this rule is the case of the
*City of Oakland* v. *Thompson,* 151 Cal. 572, [91 Pac. 387].
In that case there were considered two acts of the legisla-
ture; one general in its terms designed to enable cities and
counties and towns "to acquire, maintain, and improve
public parks and boulevards," the second and later one
being "an act authorizing the incurring of indebtedness
by cities, towns, and municipal corporations for municipal
improvements, and regulating the acquisition, construction,

and completion thereof." The city of Oakland proposed to issue bonds to purchase lands for park and boulevard purposes and proceeded under the act of 1901 (Stats. 1901, p. 27). It was argued in the case that the act of 1889 (Stats. 1889, p. 361), referring particularly to the improvement of public parks and boulevards, was exclusive in its application, and that the bonds could not be legally issued under the second act. The court said: "Thus, if it shall be determined that the act of 1901 is in its scope broad enough to include the acquisition of lands for park and boulevard purposes, there is no constitutional inhibition forbidding the legislature from providing two independent schemes to either of which a municipality may have resort as it shall deem expedient. Indeed, the essential difference between the act of 1889 and that of 1901 is in the life of the bonds, the act of 1889 providing for twenty-year bonds, and that of 1901 for forty-year bonds. One city might consider it to be more to its advantage to use the longer term bonds, while another might be of contrary opinion, and, as we have said, there is no constitutional or other objection which prevents the legislature from giving cities their option and choice in this matter."

[2] So, here, under the several statutes considered, we have two plans, in general essentials alike, but one having the effect of extending the power granted by the first, both in their nature being applicable to school districts which include cities of the fifth class. We do not regard the failure in the act of 1909 to provide for "the insuring of buildings" and the failure to provide that the bonds might, as an alternative matter, be made payable "in lawful money," to be so material as to make it evident that the legislature designed to impose special restrictions on the bond issuing privilege of the school districts referred to. We have given no particular attention to the suggestion that the fund out of which the interest and installments on the principal of the bonds is to be paid is given a different name by the act of 1909 from that assigned to it by the Political Code sections. In either case the fund is made up of money derived under tax levied particularly for the purpose of paying the bond debt, and it can only be used in discharge of that indebtedness. With these conclusions in mind it is not necessary to give consideration to the argument of respective counsel upon the question

as to whether the act of 1909 is unconstitutional as being special legislation. The school district in this case did not attempt to proceed under that act and all of the steps taken, as the petition shows them to have been, answer strictly to the requirements of sections of the Political Code which apply generally to all the school districts in the state.

In the discussion of the question here involved we have not overlooked the case of *Santa Ana School Dist.* v. *Talbert,* 19 Cal. App. 104, [124 Pac. 872]. That was a case wherein was concerned the question of the regularity of school bonds proposed to be issued under the statute of 1909, and appellant calls attention to expressions used in the decision as indicating the view of the court that the act of 1909 furnished an exclusive plan and scheme for the issuance of school district bonds in districts comprising cities of the fifth class. The language made use of and to which attention is directed was as follows: ''This act, being a complete revision of the subject to which earlier statutes related, is manifestly intended as a substitute for the former legislation, and such prior acts in relation to the subject must be considered as repealed.'' The expression is *dictum,* because there was not in that case involved the question as to whether the act of 1909 was exclusive in furnishing the mode and method for the issuance of school bonds. The procedure was there had under the act of 1909 and the only question with which the court was concerned was as to the applicability of that act in the situation presented. The case cited following the expression above quoted, to wit, *Mack* v. *Jastro,* 126 Cal. 130, [58 Pac. 372], furnishes no aid in the solution of the question which we have here considered. That case involved a consideration and comparison of two county government acts, each covering the same subject, and the question was as to whether the later act repealed the former. The court there merely reannounced the elementary rule that, as between two acts of the legislature, each completely covering the same subject, the one later in date would be deemed to have repealed the first.

Peremptory writ is ordered to be issued, as prayed for in the petition.

Conrey, P. J., and Shaw, J., concurred.