[S. F. No. 10033. In Bank.—January 24, 1924.]

ELBERT L. EVANS, Plaintiff and Appellant, v. SELMA UNION HIGH SCHOOL DISTRICT OF FRESNO COUNTY (a Public Corporation), et al., Defendants and Respondents; GEORGE ENOS, Intervener and Appellant.

[1] SCHOOL LAW — BIBLE — USE IN SCHOOL LIBRARIES.—For reference and library purposes in the public schools, the Bible in the King James version is not a book of the class prohibited by our statutes.

[2] ID.—RELIGIOUS BOOKS—CONSTRUCTION OF STATUTES.—Section 1607, subdivision 3, and section 1672 of the Political Code do not in terms exclude from the public schools "religious" books as such. There is nothing in our statutes aimed at religious work. To be legally objectionable they must be "sectarian, partisan or denominational in character."

[3] ID. — SECTARIAN AND DENOMINATIONAL — DEFINITION. — "Sect," strictly defined, means a body of persons distinguished by peculiarities of faith and practice from other bodies adhering to the same general system, and "denominational" is given much the same definition; but the term "sect" has frequently a broader signification, the activities of the followers of one faith being regarded as sectarian as related to those of the adherents of

---

1. Reading Bible in schools as sectarian instruction, notes, 105 Am. St. Rep. 153; 2 Ann. Cas. 523.

3. On questions relating to sectarianism in schools, notes, 5 A. L. R. 866; 20 A. L. R. 1351.

another; and it is this broader signification that is intended by the code provisions.

[4] ID.—CHARACTER OF BOOK—TEST.—The statute makes the character of a book the test of whether it is "sectarian," not the authorship or the extent of the approval by different sects or by all. That the authors of religious books belong to a sect or church does not necessarily make their books of a sectarian character.

[5] ID. — DIFFERENT VERSIONS OF BIBLE — ELIGIBILITY FOR SCHOOL LIBRARIES.—The fact that the King James version of the Bible is commonly used by Protestant churches and not by Catholics does not make its character sectarian; its character is what it is, a widely accepted translation of the Bible, and this is equally applicable to the Douai version. Both are scholarly translations of the Bible, neither being a book "of sectarian character" within the meaning of the statute relating to school libraries and both are eligible to public school libraries for reference purposes.

[6] ID.—PURCHASING BOOKS—NONADOPTION OF THEORIES.—The mere act of purchasing a book to be added to a school library does not carry with it any implication of the adoption of the theory or dogma contained therein, or any approval of the book itself, except as a work of literature fit to be included in a reference library.

APPEAL from a judgment of the Superior Court of Fresno County. S. L. Strother, Judge. Affirmed.

The facts are stated in the opinion of the court.

Drew & Drew and Collins & Saylor for Appellant.

E. S. Page for Respondents.

James Gallagher and H. L. Meyers for Intervener.

THE COURT.—Plaintiff brought this action to enjoin the trustees of the Selma Union High School District of Fresno County from carrying into effect a resolution for the purchase of twelve copies of the Bible in the King James version for the library of the high school. George Enos was permitted to intervene and filed a complaint which alleged substantially the same matters and sought the same relief as that of plaintiff. Both complaints rest on the contention that the King James version of the Bible is a book of a sectarian character, and that its purchase for the library

of a public school is, therefore, contrary to constitutional and statutory provisions in this state.

The trial court held that the Bible in the King James version was not a publication of sectarian, partisan, or denominational character, and accordingly gave judgment for the defendants. This appeal is from that judgment.

The constitution of this state provides (art. I, sec. 4) that "the free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be guaranteed to this state." It prohibits (art. IV, sec. 30) appropriations, grants, or payments of public moneys in aid of any "religious sect, church, creed or sectarian purpose" or to support or sustain any school or other institution "controlled by any religious creed, church or sectarian denomination whatever." In section 8 of article IX it provides that "no public money shall ever be appropriated for the support of any sectarian or denominational school, or any school not under the exclusive control of the officers of the public schools; nor shall any sectarian or denominational doctrine be taught, or instruction thereon be permitted, directly or indirectly, in any of the common schools of this state."

Political Code, section 1607 (subd. 3, Stats. 1917, p. 736), makes it the duty of boards of education and school trustees "to exclude from school and school libraries all books, publications, or papers of a sectarian, partisan or denominational character." Section 1672 of the same code provides that "no publication of a sectarian, partisan or denominational character must be used or distributed in any school, or be made part of any school library; nor must any sectarian or denominational doctrine be taught therein."

The question before us is different from those dealt with in the reported cases which consider the question of Bible instruction in the public schools. We have examined with care all decisions cited by counsel and all that our independent research has discovered, and not one of them deals with the precise question now under consideration, namely, the placing of the Bible in a public school library. These decisions all deal with questions growing out of the use of the Bible in devotional exercises or for religious instruction or as a text-book in the public schools; for that reason we do not discuss these decisions in detail in arriving at our

conclusion, although some of these decisions consider and decide whether or not the Bible is sectarian.  [1]  In our opinion, for the reasons hereafter stated, it is clear that for reference and library purposes in the public schools, it is not a book of the class prohibited by our statute.

[2]  It will be seen from the provisions of our statutes above quoted that they do not in terms exclude from these schools ''religious'' books as such.  Indeed, there is nothing in our statutes aimed at religious works.  To be legally objectionable they must be ''sectarian, partisan or denominational in character.''  It is under our code provisions that this question immediately arises, and their terms must be construed with their intent and purpose in view and the mischief at which they were aimed.  The terms used are ''sectarian'' and ''denominational.''  [3]  ''Sect,'' strictly defined, means ''a body of persons distinguished by peculiarities of faith and practice from other bodies adhering to the same general system'' (Standard Dictionary), and ''denominational'' is given much the same definition.  But the term ''sect'' has frequently a broader signification, the activities of the followers of one faith being regarded as sectarian as related to those of the adherents of another.  Since the object of these code provisions was to exclude controversial matters of any kind from the school libraries in so far as that object could be attained by the exclusion of printed matter of partisan tendency, we have no doubt that the term ''sectarian'' was used in its broad signification.  The purpose was to bar from school libraries books and other publications of factional religion, those whose character is ''sectarian, partisan or denominational.''  As a book on almost any subject may adopt a partisan tone, so a book on religion, instead of confining itself to broad principles and simple fundamentals, may emphasize particular points—those upon which differences of opinion have arisen.  In a word, a book on any subject may be strongly partisan in tone and treatment.  A religious book treating its subject in this manner would be sectarian.  But not all books of religion would be thus excluded.  The fact that it was not approved by all sects of a particular religion, nor by the followers of all religions, would not class it as sectarian for library purposes.  There is no religion that has found universal acceptance, and therefore no book of religion that has.

The correctness of this view of the meaning of these code sections is indicated by their origin. Since 1851 the statutes of this state have excluded books of a sectarian character from public school libraries. (Stats. 1851, pp. 491, 495, art. III, sec. 5; Stats. 1852, pp. 117, 125, art. VI, sec. 3; Stats. 1855, p. 229, sec. 33; Stats. 1863, p. 194, sec. 67; Stats. 1869–70, p. 824, secs. 42, 58, 71.) Political Code, section 1607 (3), was derived from section 42 (subd. 11) of the act of 1870, the language of which shows the class of publications in the mind of the legislature. It required the school authorities to exclude from schools and their libraries "*books, tracts, papers* or *catechisms* of a sectarian character*." As originally adopted into the code (Pol. Code, sec. 1617, subd. 12, enacted March 12, 1872) this language was shortened to "books, publications or papers of a sectarian character." The words "partisan or denominational" were inserted after "sectarian" by Code Amendments 1873–74, 81, and its present number (1607) was given the section by an amendment in 1917 (Stats. 1917, p. 736).

Political Code, section 1672, which has remained the same since its adoption in 1872, was derived from section 58 of the same act of 1870, which referred to "*books, tracts, papers, catechisms or other publications* of a sectarian or denominational character." Thus we think the history of these sections indicates the class of "books" and "other publications" at which the statute was aimed.

Turning to the character of the King James version, it appears that the original manuscripts of the Bible have been lost for centuries. Those available for translation are themselves "versions," and either copies or translations of still older texts. There have been numerous English translations, but those most generally in use to-day are the King James version, and its subsequent English and American revisions, and the Douai version.

The Douai version consists of a translation of the New Testament made in the English College at Rheims, published there in 1582, and of the Old Testament published at Douai in 1609.

The King James version is a translation made at the direction of James I of England, and published at London in 1611. The work was done by a commission of forty-seven

scholars drawn largely from the universities of Oxford and Cambridge. The work of its revision by English and American committees was begun in 1870, and the revised New Testament published in 1881 and the revised Old Testament in 1884.

The Douai version is based upon the text of the Latin Vulgate, the King James version on the Hebrew and Greek texts. There are variances in the rendering of certain phrases and passages. The Douai version incorporates the Apocrypha, which are omitted from the texts of the Testaments in the King James version, though in many editions they have been printed between the two Testaments. The Douai version was the work of Catholics, and is the translation used by the Roman Catholic church in English-speaking countries. The King James version and its revisions are the work of Protestants, and are used in Protestant churches.

The contention that the Bible in the King James translation is a book of a sectarian character rests on the fact that there are differences between it and, among others, the Douai version; that it is of Protestant authorship; that it is used in Protestant churches, and that it is not approved by the Catholic church. According to such a test the Bible in any known version or text is sectarian. In fact, until all sects can agree upon the manuscript texts that should be used, no English version of the Bible not "sectarian" in this view can be produced.

[4] The statute, however, deals with publications of a sectarian character. It makes the character of the book the test of whether it is "sectarian," not the authorship or the extent of its approval by different sects or by all. That the authors of religious books belong to a sect or church does not necessarily make their books of a sectarian character. [5] Nor does the fact that the King James version is commonly used by Protestant churches and not by Catholics make its character sectarian. Its character is what it is,—a widely accepted translation of the Bible. What we have said of the King James translation is equally applicable to the Douai version. Both are scholarly translations of the Bible, and neither is a book "of a sectarian character" within the meaning of the statute relating to school libraries. Both are eligible to a place on the shelves of our

public school libraries for reference purposes. Each version has claims. Regarded merely as literature, the King James version is a recognized classic. For centuries it has been the version most generally used in Protestant churches in England and America. The Douai version has merits of its own. It is the text approved by one of the world's greatest churches. Many children base their religious education upon its text. We do not assume to decide the comparative merits of the two versions. We do, however, hold that either or both may be purchased for and placed in a public school library without violation of the law of this state.

If it were a fact that the King James version of the Bible was sought to be placed in the public school library to the exclusion of all other versions of the Bible, or if it appeared to be a fact that this particular version or any other version of the Bible was to be used as a text-book for a prescribed course of study or to be used in reading therefrom to the pupils as a part of school exercises, it might then be well argued that such circumstances amounted to an implied declaration that this version was the only true version of the Scriptures, and that all others were false in so far as not in accord therewith. So used and under such circumstances, it might be justly claimed to be used as a basis for sectarian instruction. Such are not the facts in the case at bar. [6] The mere act of purchasing a book to be added to the school library does not carry with it any implication of the adoption of the theory or dogma contained therein, or any approval of the book itself except as a work of literature fit to be included in a reference library. For aught that appears in the instant case the library in question may already contain copies of the Douai version of the Bible as well as copies of the Talmud, Koran, and teachings of Confucius. If the Douai version and these other books are not already in the library, we have no right to assume that they will not be added thereto in the future. That such action would be legal and appropriate we have no doubt.

We are not required in this case to decide, nor are we to be understood as deciding, the question of whether or not the use of the Bible for class instruction amounts to the teaching of sectarian or denominational doctrine, nor to consider whether or to what extent its reading may be made a

part of the exercises in the schools without offending the provisions of the state constitution and statutes.

The judgment is affirmed.

All the Justices concurred.

Rehearing denied.