[L. A. No. 8360. In Bank.—July 1, 1925.]

## VICTOR FLEMING, Petitioner, v. THE SUPERIOR COURT OF THE COUNTY OF ORANGE et al., Respondents.

[1] MOTOR VEHICLE ACT—USE OF "SPEED TRAP"—SECTION 155 OF ACT —SUBJECT MATTER OF—CONSTITUTIONAL LAW—LEGISLATURE.—In considering the question whether section 155 of the California Vehicle Act, which defines a "speed trap" and declares that evidence relating to or based upon the maintenance or use of a "speed trap" is inadmissible in a trial of a person arrested for a violation of the provisions of the act, is violative of section 24 of article IV of the constitution, requiring that "Every act shall embrace but one subject, which subject shall be expressed in its title," the matter of the regulation of the use and operation of vehicles upon the highways of the state is to be regarded as being primarily one of legislative concern, and the courts will inquire whether there is any rational theory upon which the action of the legislature in passing the law can be sustained. If such a theory can be discovered the questioned act of the legislature will be held to be constitutional.

[2] ID.—TITLE—CONSTITUTIONAL LAW.—Section 155 of the California Vehicle Act is not violative of section 24 of article IV of the constitution, as the subject matter of its provisions is embraced within that portion of the title of the act which reads: "An act to regulate the use and operation of vehicles upon the public highways."

[3] ID.—EVIDENCE—COURTS—CONSTITUTIONAL LAW.—In view of the fact that section 155 of the California Vehicle Act amounts to a regulation of the use and operation of vehicles upon the public highways, it cannot be regarded as an attempt to regulate the procedure of courts or to prescribe a rule of evidence.

[4] ID.—WITNESSES—CRIMINAL LAW—CONSTITUTIONAL LAW. — Section
155 of the California Vehicle Act does not contravene section 13
of article I of the constitution, which provides that in criminal
prosecutions the party accused shall have the right to have the
process of the court to compel the attendance of witnesses in his
behalf; nor does it infringe section 1 of article III of the con-
stitution, which divides the powers of government into three
branches; nor does it violate subdivision 3 of section 25 of article
IV of the constitution to the effect that the legislature shall not
pass local or special laws regulating the practice of courts of
justice.

[5] SUPERIOR COURT—JURISDICTION—CERTIORARI.—On every question ex-
cept the mere question of *power* the action of the superior court is
final and conclusive when brought in question in a proceeding in
*certiorari.*

[6] ID.—APPEAL—JUDGMENT—PRESUMPTIONS.—When the superior court
has acquired its appellate jurisdiction of a criminal prosecution
instituted in the justice's court, its action within the limits of that
jurisdiction is entitled to the same presumptions of regularity that
attach to the exercise of its original jurisdiction.

[7] MOTOR VEHICLE ACT—SECTION 155—CONVICTION BASED ON INCOM-
PETENT EVIDENCE—JURISDICTION OF SUPERIOR COURT—CERTIORARI.—
A judgment of conviction in a superior court, after appeal to that
court from a justice's court, for a violation of section 113 of the
California Vehicle Act, which judgment is based on incompetent
evidence procured by traffic officers through the maintenance and
operation of a speed trap as defined in and denounced by section
155 of said act, is not in excess of the jurisdiction of the superior
court, and is no more than error in the exercise of its lawful
power; and such judgment, therefore, may not be disturbed on
*certiorari.*

(1) 12 **C. J.**, p. 787, n. 94 New, p. 883, n. 97, 98.    (2) 36 **Cyc.**,
p. 1035, n. 52.    (3) 36 **Cyc.**, p. 1019, n. 84.    (4) 12 **C. J.**, p. 823,
n. 17 New; 17 **C. J.**, p. 205, n. 19; 36 **Cyc.**, p. 1012, n. 58; 40 **Cyc.**,
p. 2156, n. 17.    (5) 17 **C. J.**, p. 204, n. 15.    (6) 16 **C. J.**, p. 539,
n. 47.    (7) 17 **C. J.**, p. 205, n. 18.

PROCEEDING on Certiorari to annul a judgment of
conviction in the Superior Court for a violation of section
155 of the California Vehicle Act.   Proceedings in Superior
Court affirmed.

The facts are stated in the opinion of the court.

David R. Faries, J. Allen Davis, Louis C. Spiess, Jr., and Richard C. Waltz for Petitioner.

Alex P. Nelson, District Attorney, for Respondents.

SHENK, J.—By complaint filed in the justice's court of Seal Beach township in the county of Orange petitioner was charged with the commission of a misdemeanor in that he did on or about the ninth day of November, 1923, drive an automobile on a public highway within said county at an excessive and unlawful rate of speed in excess of thirty-five miles an hour in violation of section 113 of the California Vehicle Act (Stats. 1923, p. 517). He was found guilty and was subjected to a fine of $25. On appeal duly taken to the Superior Court the judgment of conviction was reversed and a new trial granted. On the trial *de novo* in the respondent court, pursuant to section 1469 of the Penal Code, the petitioner was again found guilty as charged and a straight fine of $25 was imposed upon him. The present proceeding is on *certiorari* commenced in the district court of appeal of the second district, division two. The writ was there issued and after hearing the judgment of the Superior Court was annulled. On application of respondents the judgment of the district court of appeal was vacated and a hearing ordered in this court.

The cause was submitted to the respondent court for decision on the transcript of the evidence and the proceedings in the justice's court. It was stipulated that the conviction resulted solely on evidence procured by traffic officers through the maintenance and operation of a "speed trap" as defined in and denounced by section 155 of said California Vehicle Act, which reads as follows:

"Evidence based on use of speed traps not to be admitted. No evidence as to the speed of a vehicle operated on a highway by any person arrested for a violation of the provisions of this act shall be admitted in any court at the consequent trial of such person when such evidence relates to or is based upon the maintenance or use of a speed trap.

"A speed trap within the meaning of this section is a particular section of, or distance on, any highway the length of which has been or is measured for distance, and marked

off or otherwise designated or determined, and the limits of which are within the vision of an officer or officers who calculate the speed of a vehicle passing through such speed trap by using the elapsed time during which such vehicle travels between the entrance and exit of such speed trap.

"Nor shall any testimony in any such case be admitted in any court from any officer or officers arresting or participating or assisting in the arrest of such person if any speed trap was used in such arrest or if such officer or officers or any of them, were not at the time of such arrest dressed in a distinctive uniform and patrolling or upon the highway upon which the arrest was made in plain sight of all persons traveling thereon."

The petitioner contends that because of the provisions of said section 155 the evidence before the respondent court and upon which his conviction was based was incompetent and that therefore said court was without jurisdiction to render a judgment of conviction against him. The respondents contend that said section 155 contravenes numerous provisions of the state constitution and is therefore void. With reference to these contentions of respondents we approve the reasoning and adopt the conclusions of the district court of appeal in its opinion prepared by Mr. Justice Works as follows:

"We come now to the very interesting question, consisting of several branches, as to the validity of section 155 of the Motor Vehicle Act under the constitution. One contention of respondents is that the enactment is invalid under section 24 of article IV of the organic law of the state, which reads, in part: 'Every act shall embrace but one subject, which subject shall be expressed in its title.' The title of the act in which section 155 is contained is of great length, but petitioner points only to certain portions of it as 'expressing' the subject, or the part of the subject, of the act which is comprised within the section that now lies before us as follows: 'An act to regulate the use and operation of vehicles upon the public highways and elsewhere; . . . to provide penalties for violations of provisions of this act . . . ; [and] to provide for carrying out the objects of this act. . . . ' In our view it is necessary only to refer, in dealing with the attack now made upon the section by respondents, to the first member of this quotation from the

title of the act and from petitioner's brief, that is to say, 'An act to regulate the use and operation of vehicles upon the public highways and elsewhere.'

[1] "In considering the question now presented we are to remember that the matter of the regulation of the use and operation of vehicles upon the highways of the state is primarily one of legislative concern. With such affairs the courts are not called upon to deal unless it appears to them that a claimed infringement of any provision of the constitution by the legislature is plainly a real infringement. In considering such a question the courts will inquire whether there is any rational theory upon which the action of the legislature in passing a law can be sustained (*People* v. *Simonsen*, 64 Cal. App. 97 [220 Pac. 442]). If such a theory can be discovered the questioned act of the legislature will be held to be constitutional. [2] Does section 155 amount to a regulation of 'the use and operation of vehicles upon the public highways,' in the face of the contention of respondent which is here made that it provides a mere rule of evidence? Petitioner asserts in his brief that the act as a whole 'has for its primary object the safety of all travelers upon the public highways.' He then says: 'The legislature concluded that the public safety, the obvious purpose of numerous regulations contained in the act, would best be served by requiring traffic officers to spend their hours of duty in patrolling the public highways; that the presence of such officers upon the highways would constitute a far greater deterrent to excessive speed, and would insure a more universal observance of the many rules of the road than would a concealment of said officers in speed traps located off the highway. The legislature did not expressly prohibit the maintenance or use of speed traps, but it did render their maintenance and use wholly ineffectual for all purposes by expressly prohibiting the introduction of speed trap testimony. The legislative purpose is disclosed in that portion of section 155 which prohibits the introduction of any testimony from any officer or officers arresting or participating or assisting in the arrest of such person if any speed trap was used in such arrest, or if such officer or officers, or any of them, *were not at the time of such arrest dressed in a distinctive uniform and patrolling or upon the highway upon which the arrest was made in*

*plain sight of all persons traveling thereon.* The legislature
in the foregoing provision clearly expressed its conviction
that the presence of traffic officers actually patrolling the
highways dressed in distinctive uniforms and in plain sight
of all travelers on the highways would have a most salutary
effect in securing the observance of each and all of the regu-
lations imposed upon drivers of vehicles upon the public
highways. . . . The legislature knew that a very large per-
centage of accidents upon public highways occurred at street
intersections, that such accidents were caused by failure to
observe the right of way rule, by failure to give proper sig-
nals, by failure on the part of drivers to turn at intersec-
tions in the manner prescribed by law. The legislature
quite evidently believed that many of these accidents would
be prevented in the event that officers patrolled the highway
and enforced each and all the rules of the road heretofore
mentioned.' We quote thus largely from petitioner's brief
for the reason that it appears to us that he strikingly pre-
sents not only a rational but a commendable basis for the
enactment of section 155 as an effective means for accom-
plishing the main purpose of the act in which it is contained.
To quote again from the title of the enactment, why does
not section 155 provide a most salutary means 'to regulate
use and operation of vehicles upon the public highways?'
Is it not logical to suppose that the law-making body thought
it better to prevent the commission of crime than to punish
it after its commission, and that its members saw in the
means employed through section 155 a proper method of
effectuating that laudable result? If the law-making bodies
of the world should hit upon some means to prevent arson,
burglary or murder, thus obviating the necessity of laws to
provide for their punishment, should we not hail the achieve-
ment as an epoch-making triumph? It is only possible,
but it is extremely probable, as contended by petitioner, that
the members of the legislature had some such idea in mind
as is suggested by these questions when they enacted section
155, and if we can see the possibility of such a thing it is
enough under the rules of law affecting our power to pass
upon the constitutionality of the section in question.

[3] "With these reflections in mind we cannot regard
section 155 as an attempt to regulate the procedure of
courts or to prescribe a rule of evidence. The necessity

or propriety of such a purpose cannot be ascertained upon the highest flight of imagination. Why, as a mere matter of evidence, should 'speed trap evidence' be excluded from a jury. A rational and logical purpose can be discerned, however, as we have attempted to point out, in the enactment of the section as a means to regulate the use and operation of vehicles upon the public highways. To this purpose the interdict against the admissibility of such evidence is merely an adjunct. Suppose the legislature had made the maintenance of speed traps a penal offense. Would anyone question such an enactment on the ground that it did not come within the title of the Motor Vehicle Act? Surely not. That means of stamping out what the legislature evidently regarded as the speed trap evil would have been entirely proper under the title of the act, and an enactment designed to suppress the same evil by making the maintenance of speed traps utterly useless is, to our minds, equally within the objects of the statute as a whole and as clearly within its title.

[4]  "Respondents further insist that section 155 is unconstitutional under section 13 of article I of the organic law. That section reads, in part: 'In criminal prosecutions . . . the party accused shall have the right . . . to have the process of the court to compel the attendance of witnesses in his behalf. . . . ' This point is advanced upon the theory that one under prosecution for the violation of provisions of the law forbidding the operation of vehicles on the highways at an excessive speed might desire the testimony in his own behalf of officers operating a speed trap at the time of the commission of his alleged crime, and that section 155 denies him that right. We do not pause to determine whether the point may not be concluded by our disposition of the question last above discussed, upon the theory that section 155 in its essential purpose has not to do with a question of evidence, but was enacted for the purpose of preventing the maintenance of speed traps, thus, in the exercise of the judgment of the legislature, placing such devices, or means of procuring evidence, outside the public policy of the state. Considering section 155 from the viewpoint of respondent, it cannot operate to deny a defendant process under which to procure the attendance of witnesses in his behalf, or to prevent the examination of *competent*

witnesses, granting that the constitutional guaranty as to process includes a guaranty of the right to examine witnesses produced. The section merely provides that officers operating speed traps *cannot be* witnesses as to knowledge derived by them while so acting. As well might it be contended that section 13 of article I is violated by section 1881 of the Code of Civil Procedure, which provides that husband and wife may not testify against each other, that an attorney may not testify against his client, that a priest may not as a witness betray the secrets of the confessional, that a physician may not testify against his patient, and that a public officer may not be examined as to communications made to him in official confidence, for a prohibition against all such°persons testifying *against* certain parties includes, necessarily, a prohibition against their testifying *in favor* of those opposed to such parties. The same might be said as to other enactments which make various kinds of 'natural' evidence incompetent. Practically all rules of evidence are exclusionary (Jones Ev., sec. 1), and it has never been doubted that the legislature has power to declare certain 'natural' evidence inadmissible, or to declare certain persons incompetent as witnesses, either on grounds of public policy, or for the purpose of conducing to the despatch of business in the courts.

"Respondents inveigh against the constitutionality of section 155 because, as they contend, it infringes the provisions of section 1 of article III of the constitution. This section provides, in effect, that the powers of government are divided into three branches, the executive, the legislative and the judicial, and that 'no person charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others.' It is said that the legislature, in enacting section 155, has usurped the functions of the judicial branch. This point has been sufficiently covered by what we have already said as to the two other constitutional questions of which we have made disposition. We think the point now presented is without merit.

"It is said that section 155 violates that provision of the constitution to the effect that the legislature shall not pass local or special laws regulating the practice of courts of justice (subd. 3, sec. 25, art. IV). This question is an-

swered by what we have said in discussing the claim that the subject matter of section 155 is not covered by the title of the act of which it is a part. It may be remarked, in addition, that the section is neither special nor local legislation. This fact is so obvious to us that we conclude the particular question upon a mere mention of it.''

Since it is determined that said section 155 does not contravene any of the said provisions of the constitution it necessarily follows that the evidence admitted by the respondent court in support of the allegations of the complaint and as a foundation for the judgment of conviction was incompetent. It is the position of petitioner that with naught but incompetent evidence to support its judgment the respondent court was acting without jurisdiction. The respondents contend that the respondent court as a court of general jurisdiction had the power to determine the guilt or innocence of the petitioner who was properly before it charged with a public offense and that assuming the evidence to be erroneously admitted, its determination based thereon was not void for want of jurisdiction but was merely error in the exercise of jurisdiction. In support of their contention the respondents rely on *Roberts* v. *Police Court,* 185 Cal. 65 [195 Pac. 1053], and earlier decisions to the same effect. [5] It is well settled that on every question except the mere question of *power* the action of the Superior Court is final and conclusive when brought in question in a proceeding on *certiorari.* As stated in the *Matter of Hughes,* 159 Cal. 360 [113 Pac. 684] : ''The supreme court has jurisdiction in *certiorari* to review a judgment of the superior court only in a case where that court has exceeded its jurisdiction (Code Civ. Proc., sec. 1068), and in such cases only for the purpose of inquiring whether or not the judgment sought to be reviewed was in excess of jurisdiction, or as the code expresses it, 'the review upon this writ cannot be extended further than to determine whether the inferior tribunal, board, or officer has regularly pursued the authority of such tribunal, board, or officer.' (Code Civ. Proc., sec. 1074.) If such tribunal has regularly pursued its authority, our inquiry stops. We cannot consider or correct errors of law committed by the inferior court in the exercise of its authority on the merits of the cause it has jurisdiction to entertain and decide. No matter how erroneous that

decision may be, even on the face of the record, we have no power to change, annul, or reverse it in this proceeding, if that court had jurisdiction to act in the matter before it. This has been repeatedly stated in former decisions of this court.''

[6]   When the respondent court had acquired its appellate jurisdiction its action within the limits of that jurisdiction was entitled to the same presumptions of regularity that attached to the exercise of its original jurisdiction. (*Sherer* v. *Superior Court,* 94 Cal. 354 [29 Pac. 716].)   In *Roberts* v. *Police Court, supra,* it was held with reference to the power of the Superior Court on an appeal from a police court: ''The statute gives to such court the power, upon such appeal, to reverse the judgment of the police court and grant a new trial, or to approve the judgment of the police court. It must determine the appeal, reversing or approving the judgment of the police court as it deems one or the other course proper in view of the matters shown by the statement of the case.   Whichever it does it is acting in the exercise of its lawful jurisdiction, and not in excess of such jurisdiction.   It has the same *power* to affirm in any case that it has to reverse, and the mere fact that its conclusion is wrong does not make its action an excess of its *jurisdiction.*   In such case we have simply error in the exercise of jurisdiction. . . . Where a court is invested with jurisdiction to determine the question of the guilt or innocence of one charged with a public offense, . . . by the filing of the complaint and by acquiring jurisdiction over the person of the defendant, its determination of the question of guilt or innocence, whether based on sufficient evidence or not, is a determination arrived at in the exercise of its jurisdiction, and however erroneous it may be, it is not void for want of *power* in the court to render the decision.''

[7]   The substance of petitioner's contention is that the respondent court should have found him not guilty of the charge because of lack of competent evidence to convict him. To put it another way, he is insisting that he was wrongly convicted because of evidence before the court which was erroneously admitted. But in such a case the claim of insufficiency of evidence to show the guilt of the accused does not go to the jurisdiction. The determination of the

196 Cal.—23

court is no more than error in the exercise of its lawful power. Having acquired its appellate jurisdiction its judgment within the limits of said jurisdiction was a final judgment and errors within such jurisdiction "must be submitted to as part of the sacrifice that every individual is compelled to yield to the infirmities of human government." (*Sherer* v. *Superior Court, supra.*) In support of his contention that the respondent court was acting without jurisdiction the petitioner cites *McClatchy* v. *Superior Court,* 119 Cal. 413 [39 L. R. A. 691, 51 Pac. 696], *Estate of Paulsen,* 35 Cal. App. 654 [170 Pac. 855], *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180 [149 Pac. 35], *Van Hoosear* v. *Railroad Com.,* 189 Cal. 228 [207 Pac. 903], and *Hotaling* v. *Superior Court,* 191 Cal. 501 [29 A. L. R. 127, 217 Pac. 73]. In considering the applicability of those cases to the question in hand it must be borne in mind that an exception to the rule that the sufficiency of the evidence will not be reviewed on *certiorari* is made when the question is whether jurisdictional facts were or were not proved, that is, whether facts upon which jurisdiction depends were or were not proved (*Stumpf* v. *Board of Supervisors,* 131 Cal. 364 [82 Am. St. Rep. 350, 63 Pac. 663]; 4 Cal. Jur. 1111, and cases cited). The cases relied upon by petitioner are cases wherein the exception has been applied and have no controlling significance in the application of the general rule to the case at bar.

For the reason that the judgment of the respondent court was regularly made and entered in the exercise of its jurisdiction and was a final judgment on appeal from the justice's court, it is beyond the legitimate power of this court to disturb it.

The proceedings in the respondent court are therefore affirmed.

Richards, J., Seawell, J., Waste, J., Lennon, J., Lawlor, J., and Myers, C. J., concurred.