[Civ. No. 37. Fourth Appellate District.—December 18, 1929.]

W. E. CHILSON, Plaintiff, v. W. C. JEROME, as Auditor, etc., Respondent; CHARLES E. HARBESON, Intervener and Appellant.

Thomas L. McFadden, Leonard Evans, McFadden & Holden and Leo J. Friis for Appellant.

Charles D. Swanner for Respondent.

MARKS, J.—Plaintiff and intervener, as taxpayers and citizens of Orange County, sought to restrain the respondent, as auditor of the county of Orange, from drawing a warrant on the treasurer of the county of Orange in the sum of $10,000 in favor of the city of Santa Ana, a municipal corporation of the fifth class, situated within such county, the money to be used by the city in paying part

of the expenses of paving South Main Street, one of its public streets.

The parties stipulated to all of the necessary and material facts and judgment was rendered in favor of respondent. Under the agreed statement of facts there were but two questions of law for the court below to determine, namely, first: Do the provisions of section 1 of the act of the legislature of the state of California, entitled, "An act authorizing counties to improve or assist in the improvement of streets lying in municipalities," approved April 30, 1923 (Stats. 1923, p. 123), as amended April 30, 1925 (Stats. 1925, p. 236), conflict with the provisions of the "California Vehicle Act," as amended May 19, 1925 (Stats. 1925, p. 389), and if so, which act controls; and, second: Does a resolution of the board of supervisors of the county of Orange appropriating this money and directing its payment to the city of Santa Ana out of a county fund designated as the "Motor Vehicle Fund" name a fund out of which the money can be paid lawfully?

Appellant presents a third question, namely: Does the resolution of the board of supervisors determine that the paving of South Main Street was at the time of its passage a street improvement of general county interest, and, also: Does it further determine that county aid should be given to assist in paving this street? This last question only becomes important if this court should hold that the provisions of the act approved April 30, 1923 (Stats. 1923, p. 123), as amended April 30, 1925 (Stats. 1925, p. 236), which we will, for convenience, refer to as the County Aid Act, are controlling over the provisions of the California Vehicle Act.

The County Aid Act provides that "The board of supervisors of any county may by resolution adopted by a four-fifths vote of the members thereof determine that the proposed establishing, laying out, opening, widening, extending, straightening, construction, improvement or altering of any street or other public way or any portion thereof within an incorporated city or extending along or across the boundary thereof or the establishing, modifying or changing the grade thereof or the separation of the grades of any two or more streets or other public ways which intersect each other or the separation of the grades of any such street or other

public way and any steam, electric or street railroad crossing such street or other public way or the construction of the necessary pavements, curbs, culverts, bridges, tunnels, subways, viaducts, drainage facilities or other structures incident to or a part of such street or other public way or the acquisition by purchase, condemnation or otherwise of any lands, rights of way or other property necessary for any of the purposes hereinbefore mentioned is of general county interest and that county aid shall be extended therefor. Such resolution must refer to the proposed new or existing street or portion of street or other public way, the general nature of the improvement proposed and the nature of the aid to be furnished by the county and the fund or funds from which it is to be paid.''

The act further provides that the county aid may consist of the contribution of money, or the furnishing of materials, engineering services or labor, or in the loan of its road building machinery. The expense of the aid may be paid by the county from ''the general fund, the general road fund, the fund composed of moneys received from the state pursuant to the California Vehicle Act or pursuant to chapter two hundred sixty-seven of the Statutes of 1923 . . . or from any other fund available for such purposes.'' It also provides for the taking over of any city street as a county highway, and its return to the control of the municipality.

Section 159 of the California Vehicle Act provides that a certain portion of the ''net receipts'' derived under the terms of the act shall be paid to the county and ''shall be deposited in the road funds of the several counties receiving the same and shall be expended by such counties exclusively in the construction and maintenance of public roads, bridges and culverts in said counties respectively; provided, that the board of supervisors of any county may in its discretion expend any portion of such sums so received by such county in the construction, maintenance and repair of streets, bridges and culverts within those incorporated cities therein, the legislative bodies of which by ordinance authorize such work of construction, maintenance and repair.'' This act has to do with the control, operation, licensing of motor vehicles and their drivers, and the disposition of the funds received by the state under the

revenue producing terms of the act, and provides certain penalties for the violation of its provisions. The general fields of operations of the two acts are widely separated, and only approach each other on the question of the use of the county portion of the revenue derived under the California Vehicle Act in aiding cities in the improvements of their streets.

It is admitted that the city of Santa Ana was within the boundaries of the county of Orange and that it had taken all steps necessary to authorize it to receive the county aid under either of these acts.

On the twenty-seventh day of March, 1927, the board of supervisors of the county of Orange, at a regular meeting, and by a vote of three for and two against, passed and adopted the following resolution: "That the sum of Ten Thousand Dollars ($10,000.00) be expended from the Motor Vehicle Fund in the construction of South Main Street in the city of Santa Ana, by paving and otherwise improving the same, it appearing that the Board of Trustees of said City have authorized such improvement and ordered the construction of said work; and that the County Auditor be directed to draw a warrant for said amount to be paid to the City of Santa Ana for the improvement of said street; and Be It Further Resolved: That the previous action of this Board in regards to the said appropriation be and the same is hereby rescinded." The resolution did not pass by the four-fifths vote required by the County Aid Act, so, if it stands at all, it must do so under the provisions of the California Vehicle Act.

Many more varieties of work and improvements may be performed under the County Aid Act than under section 159 of the California Vehicle Act, as will appear from their provisions already quoted. Under the former act the cost of the aid may be paid by the county from money raised from general taxation, or received from special sources, or from any other funds of the county available for such purposes. The aid may consist of the furnishing of either money, materials, services, labor or the use of machinery by the city. Assuming, but not holding, that the large powers and authority granted under this act are lawful, the county may enter upon and engage in an extensive program of street opening, improvement and maintenance of city streets,

building of bridges, separation of grades, etc., done largely at county expense and under its engineers and with its equipment, subject to the consent of the municipality, provided that four-fifths of the board of supervisors determine that the improvement of the streets is of general county interest, and the county funds are available.

Under the California Vehicle Act, the work or improvements for which aid may be furnished consists of the construction, maintenance and repair of streets, bridges and culverts. The cost of the aid must be paid from money received by the county from the "net receipts" paid to it by the division of motor vehicles of the state. The aid can consist only of money.

■ It is the well-settled rule of law in this state that the courts will construe a statute so as to give it full force and effect as far as is possible so that it may stand in its entirety (*Kydd* v. *San Francisco*, 37 Cal. App. 598 [174 Pac. 88]; *Hunt* v. *Manning*, 24 Cal. App. 44 [140 Pac. 39]). If the language will reasonably permit, a construction will be given statutes which will sustain and render them valid and operative rather than defeat them, sec. 3541, Civ. Code; *Glassell Development Co.* v. *Citizens' Nat. Bank*, 191 Cal. 375 [28 A. L. R. 1427, 216 Pac. 1012]; *Cuthbert* v. *Woodman*, 185 Cal. 43 [195 Pac. 673]). ■ The Constitution vests the law-making powers of the state in the legislature and when the action of this body results in legislation duly passed and approved by the Governor, the courts will not hold the law invalid and without effect, a mere form without a purpose, unless clearly compelled to do so by the circumstances of the case (*Bickerdike* v. *State*, 144 Cal. 681 [78 Pac. 270]). ■ A statute should be construed with reference to the whole system of the law of which it forms a part so that all may be harmonized and given effect (23 Cal. Jur., p. 784). It therefore becomes the duty of this court to give force and effect to both the County Aid Act and section 159 of the California Vehicle Act if it can consistently do so without doing violence to the terms of either act. The provisions of neither of these acts have been before the upper courts for construction. We find, however, that the rules of statutory construction are well established in this state by a long line of well-considered authorities that

render the solution of the question before us less difficult than it might otherwise be.

■ It is a general rule of construction that a statute having a special application controls a general one without regard to the dates of their passage and that an act general in its character will not annul the provisions of one covering a special subject, even though it seems to cover the same general ground. (*People* v. *Pacific Implement Co.,* 130 Cal. 442 [62 Pac. 739]; *McNeil* v. *Kingsbury,* 190 Cal. 406 [213 Pac. 50]; *Riley* v. *Forbes,* 193 Cal. 740 [227 Pac. 768]; *Bateman* v. *Colgan,* 111 Cal. 580 [44 Pac. 238]; *Glassell Development Co.* v. *Citizens' Nat. Bank, supra.*)

■ There is a presumption against implied repeals (*Inyo County* v. *Hess,* 53 Cal. App. 415 [200 Pac. 373]), and it is the duty of the courts to give full force and effect to all statutes not expressly repealed in so far as this may be reasonably possible so to do. It is well settled that the inconsistency between statutes must be clear, actual and irreconcilable before a repeal by implication will be said to exist. (*People* v. *Pacific Implement Co., supra; In re Johnson (Ex parte Cannon),* 167 Cal. 142 [138 Pac. 740]; *In re Mitchell,* 120 Cal. 384 [52 Pac. 799]; *Board of Education* v. *Talbert,* 52 Cal. App. 657 [199 Pac. 555].)

■ In the case of a statute having a special application coming into apparent conflict with one of general scope, the latter need not be entirely excluded from its field of operations where the two may be so construed so as to give them both effect without actual conflict and antagonism (*Cohn* v. *Isensee,* 45 Cal. App. 531 [188 Pac. 279]).

The County Aid Act provides a broad plan for a county to assist a municipality in its street improvement program, and provides that the supervisors of a county may use almost any of the county funds available to pay for them, while the California Vehicle Act limits the county aid to three specified forms of work, and limits the money to be used to that derived from a single source. There is another important distinction in the action required on the part of municipalities to obtain aid under the two acts. The California Vehicle Act provides that the legislative body of the city must by ordinance authorize the work of construction, maintenance and repair, before the aid can

be given by the county, which was done in the case before us. An ordinance is the most solemn form of legislation on the part of a city. The County Aid Act contains no such provision.

■ To the extent that the County Aid Act goes far beyond the provisions of the California Vehicle Act, it must be held to be an act having a general purpose and effect and that the California Vehicle Act and section 159 thereof is one having a special application relating only to the expenditure of the counties' portion of the income derived under the general revenue producing provisions of the act. We, therefore, hold that the two acts are not in conflict, but that each is complete in itself, and ■ where the legislative body of a municipality by ordinance authorizes the improvement of a given city street, the board of supervisors can pass a resolution giving county aid to the work by a majority vote only, and need not find that the proposed improvement is of general county interest, nor describe the character of the aid to be extended, the resolution being passed under the authority of section 159 of the California Vehicle Act. ■ The appropriation of money to assist in a municipal improvement in itself determines that aid should be given the city for such work.

■ The case of *White* v. *Hayden,* 126 Cal. 621 [59 Pac. 118, 119], disposes of the second contention of appellant. In this case the Supreme Court said: "However this may be, if it be the Auditor's duty to designate the fund, and as no such duty is imposed upon the board, we do not see that the Auditor would be bound by the act of the board, but that it would rather be his duty to draw the warrant on the proper fund whether the board had designated the fund or not. The board has performed its legal function when it has allowed and certified the claim, and if it has made a mistake in indicating the fund, or has gone beyond its powers to designate the fund, the duty of the Auditor remains to draw his warrant as the law in the particular case would authorize."

Judgment affirmed.

Sloane, P. J., and Barnard, J., concurred.