130 Cal.App.2d Supp. 874 (1955)
THE PEOPLE, Respondent,
v.
SCOTT BEAMER, Appellant.
California Court of Appeals. 
Jan. 17, 1955.
 Kennedy Jackson for Appellant.
 J. F. Coakley, District Attorney (Alameda), and L. E. Dayton, Assistant District Attorney, for Respondent.
 HOYT, J.
 This is an appeal from a judgment of conviction of a violation of section 510 of the Vehicle Code by driving an automobile upon a public street at 35 miles an hour in a prima facie 25-mile zone. The only evidence concerning appellant's speed was obtained by use of a device known as an electromagnetic radar speed meter. This evidence was admitted over the defendant's objection that it was inadmissible under sections 751 and 752 of the Vehicle Code.
 The evidence shows that the speed meter was mounted on the trunk of a police car. The police car was parked at the street curb and was painted a distinctive color as prescribed by law. Both the police car and the speed meter were in full view of persons traveling along the street. The officer who determined appellant's speed and the arresting officer were both in the regulation uniform of a traffic officer.
 Three experts testified as to the electronic principles underlying the operation of this device. Their testimony was to the effect that basically it consists of an ultrahigh frequency radio transmitter and receiver operating on a frequency of 2445 megocycles, a visual speed indicator calibrated to show miles per hour, and a graphic recorder on which speed in miles per hour is recorded.
 Electromagnetic waves traveling at the speed of light are beamed from the transmitter by means of a directional antenna. The crests of these waves are approximately 2.1 inches apart. When these waves hit a solid object they are reflected or bounced back to the receiver. The reflected waves travel at the same speed as the outgoing waves. If the object reflecting the waves back to the receiver is standing still, the same number of waves are received per second by the receiver as are transmitted per second by the transmitter. If the object reflecting the waves is moving away from the transmitter and receiver, each succeeding transmitted wave travels a slightly greater distance than the preceding wave, and each reflected wave travels the same increased distance, with [130 Cal.App.2d Supp. 876] the result that the number of reflected waves returning to the receiver in any given time period is decreased in direct proportion to the speed with which the reflecting object is moving away from the transmitter and receiver. The device then electronically compares the transmitter frequency with the decreased frequency with which reflected waves return to the receiver, and from this comparison registers the speed with which the reflecting object is moving away from the transmitter and receiver on a visual dial calibrated in miles per hour.
 Similarly, when the reflecting object is moving toward the transmitter and receiver, the distance traveled by each succeeding wave is reduced in direct proportion to the speed with which the reflecting object is moving toward the device, with the result that the number of reflected waves returning to the receiver in any given time period is increased in direct proportion to the speed with which the reflecting object is moving toward the transmitter and receiver. The device then electronically compares the transmitter frequency with this increased frequency with which reflected waves return to the receiver and determines from this comparison the speed with which the reflecting object is moving toward the transmitter and receiver, and registers that speed on the visual dial. The speeds obtained are likewise recorded upon the graphic recorder.
 The device will work equally well whether the reflecting object is approaching or moving away from it. It is not necessary for the device to be stationary. If it is moving, the speed of its movement must be added to or subtracted from the speed of the reflecting object as registered on the speed indicator, depending upon whether the device is moving toward or away from the reflecting object.
 [1] The only contention made by appellant is that the radar device in question is a speed trap within the meaning of sections 751 and 752 of the Vehicle Code. This is a novel question so far as the appellate courts of this state are concerned.
 Section 751, so far as pertinent, reads as follows:
 "(b) A speed trap within the meaning of this chapter is a particular section of a highway measured as to distance and with boundaries marked, designated or otherwise determined in order that the speed of a vehicle may be calculated by securing the time it takes said vehicle to travel such known distance. [130 Cal.App.2d Supp. 877]"
 "(c) No evidence as to the speed of a vehicle upon a highway shall be admitted in any court upon the trial of any person for an alleged violation of Division IX of this code when such evidence is based upon or obtained from or by the maintenance or use of a speed trap."
 Section 752, so far as pertinent, provides: "(a) In any prosecution under Division 9 of this code upon a charge involving the speed of a vehicle every officer or other person shall be incompetent as a witness if the testimony of such officer or person is based upon or obtained from or by the maintenance or use of a speed trap."
 As defined in section 751 of the Vehicle Code a speed trap consists of four elements: (1) A particular section of a highway, (2) measured as to distance, (3) with boundaries marked, designated or otherwise determined, and (4) in order that the speed of a vehicle may be calculated by securing the time it takes said vehicle to travel such known distance.
 The evidence of the experts in this case shows that the radar device in question determines the speed with which an object is moving toward or away from the device through space. It makes no difference whether the object in question is moving upon the surface of the ground or in the air, and it makes no difference whether the object is moving vertically or horizontally, or at any angle between the vertical and the horizontal.
 The determination of speed is made without reference to any particular section of a highway and, in fact, without reference to any highway at all. The distance measured by this radar device is the distance the reflecting object travels through space and not a measured distance on the highway. Highway boundaries, marked or otherwise determined, are not involved in the operation of this device.
 Appellant contends that this radar device is a speed trap because it measures time and distance and actually measures the distance a vehicle travels on the highway. Every determination of speed through space or over the ground involves a determination of time and distance because speed equals distance divided by time. This argument could be applied with equal force to the speedometer in the traffic officer's car when he pursues a speeder along the highway. It is too well established for argument that the officer's speedometer in his automobile is not a speed trap, even though the speedometer is actuated by the movement of the tires of the car [130 Cal.App.2d Supp. 878] along the particular portion of the highway which it is traveling, and incidentally measures the length of such portion.
 For the reason that the electromagnetic radar speed meter here involved determines speed through space without reference to the highway, it would seem to be clear that it is not a speed trap within the meaning of section 751 of the Vehicle Code and the judgment of conviction must be affirmed.
 Judgment affirmed.
 Ledwich, J., concurred.
 WAGLER, P. J.
 I dissent. The majority opinion fails to take into consideration the applicable rules of statutory construction. When viewed in the light of these rules, the record in my opinion discloses a violation of both the spirit and the letter of sections 751 and 752 of the Vehicle Code.
 "It is a cardinal rule that statutes are construed according to the intention, or at least according to the apparent or evident intention or purpose of the law makers. Such intention controls, if it can be reasonably ascertained from the language used. Indeed, it has been said that the legislative intent in enacting a law is the law itself. Accordingly, the primary rule of statutory construction, to which every other rule as to interpretation of particular terms must yield, is that the intention of the legislature must be ascertained, if possible, and when once ascertained must be given effect, even though it may not be consistent with the strict letter of the statute." 23 Cal.Jur. 725 et seq.; County of Alameda v. Kuchel, 32 Cal.2d 193 [195 P.2d 17]; Dickey v. Raisin Proration Zone No. 1, 24 Cal.2d 796, 802 [151 P.2d 505, 157 A.L.R. 324]; Dempsey v. Market Street Railway Co., 23 Cal. 2d 110, 113 [142 P.2d 929]; Burns v. Massachusetts Bonding & Ins. Co., 62 Cal.App.2d 962, 971 [146 P.2d 24].
 Statutes are to be construed not only with their intent and purpose in view, but also with regard to the mischief or evil at which they are aimed. Buckner v. Vetterick, 124 Cal.App.2d 417, 418 [269 P.2d 67]; Evans v. Selma Union High Sch. Dist., 193 Cal. 54, 57 [222 P. 801, 31 A.L.R. 1121].
 The legislative intent underlying the enactment of these statutes has been judicially determined. In construing section 155 of the Vehicle Code (the predecessor to Veh. Code, 751 and 752) the Supreme Court of this state has pointed out that the section in question was enacted as a "means of stamping out what the legislature evidently regarded as [130 Cal.App.2d Supp. 879] the speed trap evil." See Fleming v. Superior Court (1925), 196 Cal. 344, 350 [238 P. 88]. The evils attendant upon the use of speed traps and the abuses which the Legislature sought to correct are well known to those who operated motor vehicles upon our highways prior to 1923. (See 14 Cal.L.Rev. 142.)
 In discussing the purposes underlying the enactment of the speed trap law, the Supreme Court said in Fleming v. Superior Court, 196 Cal. 344, 348 [238 P. 88]: "The legislature concluded that the public safety, the obvious purpose of numerous regulations contained in the act, would best be served by requiring traffic officers to spend their hours of duty in patrolling the public highways; that the presence of such officers upon the highways would constitute a far greater deterrent to excessive speed, and would insure a more universal observance of the many rules of the road than would a concealment of said officers in speed traps located off the highway. The legislature did not expressly prohibit the maintenance or use of speed traps, but it did render their maintenance and use wholly ineffectual for all purposes by expressly prohibiting the introduction of speed trap testimony. The legislative purpose is disclosed in that portion of section 155 which prohibits the introduction of any testimony from any officer or officers arresting or participating or assisting in the arrest of such person if any speed trap was used in such arrest, or if such officer or officers, or any of them, were not at the time of such arrest dressed in a distinctive uniform and patrolling or upon the highway upon which the arrest was made in plain sight of all persons traveling thereon. The legislature in the foregoing provision clearly expressed its conviction that the presence of traffic officers actually patrolling the highways dressed in distinctive uniforms and in plain sight of all travelers on the highway would have a most salutary effect in securing the observance of each and all of the regulations imposed upon drivers of vehicles upon the public highways. ... The legislature knew that a very large percentage of accidents upon public highways occurred at street intersections, that such accidents were caused by failure to observe the right of way rule, by failure to give proper signals, by failure on the part of drivers to turn at intersections in the manner prescribed by law. The legislature quite evidently believed that many of these accidents would be prevented in the event that officers patrolled the highway and enforced each and all the rules of the road heretofore mentioned." [130 Cal.App.2d Supp. 880]
 From the foregoing it is clear that the Legislature thought it better to prevent the commission of crime than to punish it after its commission, and that so far as speed law violations were concerned, it intended to make entirely ineffectual every method of apprehension which involved entrapment or similar procedures.
 It is equally clear that the radar device used by the traffic officers in this case is adaptable to just such methods. Any construction of the speed trap statute which has the effect of reinstating the use of such methods violates the spirit of the law and is contrary to the intention and purpose of the lawmakers.
 Since the intention of the Legislature is clear, and since the Legislature has also defined the term "speed trap" (Veh. Code, 751 subd. (b)), it is clearly the duty of this court to reverse the conviction in this case if the language of the definition is sufficiently broad under any reasonable construction to encompass the method used by the traffic officers to obtain the evidence upon which the conviction is based. Glassell Dev. Co. v. Citizen's Nat Bank (1923), 191 Cal. 375 [216 P. 1012, 28 A.L.R. 1427]; Fay v. District Court of Appeal (1927), 200 Cal. 522 [254 P. 896]; Pasqual v. DeVries (1929), 101 Cal.App. 479 [281 P. 1057]; Chilson v. Jerome (1929), 102 Cal.App. 635 [283 P. 862]; Southern Pac. Co. v. Stibbens (1930), 103 Cal.App. 664 [285 P. 374]; Carr v. Kingsbury (1931), 111 Cal.App. 165 [295 P. 586]; RCA Photophone Inc. v. Huffman (1935), 5 Cal.App.2d 401 [42 P.2d 1059]; In re Maki (1943), 56 Cal.App.2d 635 [133 P.2d 64]; King v. Mortimer (1948), 83 Cal.App.2d 153 [188 P.2d 502]; 23 Cal.Jur. 722, 725; Civ. Code, 3541.
 If the language is reasonably susceptible of two constructions, that construction which is more favorable to the defendant must be adopted, since "the defendant is entitled to the benefit of every reasonable doubt, whether it arises out of a question of fact or as to the true interpretation of words, or the construction of the language used in a statute." People v. Ralph, 24 Cal.2d 575, 581 [150 P.2d 401]; Ex parte Rosenheim, 83 Cal. 388 [23 P. 372]; People v. Sayre, 26 Cal.App.2d Supp. 757 [70 P.2d 546].
 Section 751, subdivision (b), defines a speed trap as follows: "A speed trap within the meaning of this chapter is (1) a particular section of a highway (2) measured as to distance and (3) with boundaries marked, designated or otherwise determined (4) in order that the speed of a vehicle [130 Cal.App.2d Supp. 881] may be calculated by securing the time it takes said vehicle to travel such known distance." Having in mind these elements, let us examine the radar device and its method of operation as disclosed by the record.
 The device sends out successive electromagnetic waves or impulses toward the vehicle which is under surveillance. The maximum effective range is 175 feet. These waves, which travel at the speed of light strike the vehicle and are reflected back at the same rate of speed. "The continually going out waves and the continually returning waves create an interference in crossing and passing each other, which results in a phenomenon between the vehicle and device known as a standing wave." The distance between the crests on the standing wave is 2.1 inches. If the vehicle is stopped, the standing wave remains motionless. When the vehicle is going toward the device, the standing wave is at all times contiguous to the front of the vehicle. It is literally pushed ahead of the vehicle and into the recording device. When the vehicle is going away from the device the converse is true. The wave, therefore, moves at the exact speed of the vehicle. "The machine is inherently a counting device." It counts the number of standing wave crests which pass through it per unit of time, and every time a wave crest is counted, it means that the vehicle has travelled 2.1 inches along the highway. The device computes the speed of the vehicle in miles per hour by dividing the measured distance travelled by the time required. This result, in turn, is shown on a visual meter and on a graph activated by the device.
 The first element of a speed trap as defined by section 751, subdivision (b), "a particular section of highway" is of course present, for as soon as the radar device is set up a particular section of highway comes under surveillance. The second element, "measured as to distance," is also present, because it is only by measuring a specific distance that the device can calculate speed. This measured distance is always some multiple of 2.1 inches and less than 175 feet. There is nothing in the statute which requires that the distance be measured at any particular time or in any particular manner, or that it be measured upon the surface of the highway. The third element consists of "boundaries, marked, designated, or otherwise determined." The boundaries of the particular section of highway which are measured by the device are not marked or designated, but they are "otherwise determined" each time the device measures distance, since it is [130 Cal.App.2d Supp. 882] impossible to measure distance without a point of beginning and a point of ending. The statute does not require that these boundaries be determined in any particular manner, or that they be marked at all, or that the measured distance be any given number of feet. The fourth requirement, that "the speed of a vehicle be calculated by securing the time it takes for the vehicle to travel such known distance," is simply a restatement of the formula of physics that velocity equals distance divided by time. Although the computation is made by the device, this formula is used in the computation. The statute does not require that the computation be made by a person or by any particular method.
 Since all of the elements necessary to constitute a speed trap are included in the device and method used by the traffic officers to obtain the evidence of speed in this case, it would appear that the evidence was admitted in violation of both sections 751 and 752 of the Vehicle Code.
 The majority opinion implies that the device and method used by the traffic officers in this case is analogous to the method of detection followed when a speedometer is used. This is an erroneous conclusion. The radar device determines the actual speed of the vehicle under surveillance, whereas the speedometer does not. The speedometer determines the speed of the vehicle operated by the traffic officer, who then by comparison attempts to estimate the speed of the vehicle being pursued. Of course, when a speedometer is used, the element of entrapment which is implicit in the speed trap law is totally lacking.
 The majority opinion argues that the method used to calculate the speed of the defendant's vehicle does not constitute a speed trap, because the device measured the distance travelled by the defendant's vehicle through space rather than on the highway. In my opinion the statute cannot reasonably be given this narrow construction, and to do so does violence to the intention of the Legislature. Does not the highway include the space immediately above the surface of the pavement? Furthermore, the argument proves too much. In the light of this reasoning, the enterprising village constable need not even acquire a radar device, but needs only to measure his distance in the space about the highway or on private property adjacent to the highway in order to circumvent the law; or better yet, he might install a system of electric eyes just off the highway. They in turn "through space" could make and record all of the [130 Cal.App.2d Supp. 883] observations necessary to the determination of the speed that a vehicle travelled "through space" above the highway.
 Ironically the defendant was convicted of operating his vehicle at an excessive speed upon the highway, but if we carry the reasoning of the majority opinion to its logical conclusion, we find the record barren of any evidence of the speed of defendant's vehicle upon the highway, because the radar device calculated its speed only through space "without reference to any highway at all."
 It may well be that the speed trap law is no longer a wise law, and that it should be repealed. However, this is not the function of the courts but of the Legislature, which can at the same time enact proper statutory safeguards to prevent the recurrence of the evils which prompted the passage of the law in the first instance. I would reverse the judgment.